## STATE OF IOWA, v. J. F. LEHLAN, Appellant.

**Criminal law:** CONSPIRACY: EVIDENCE OF CO-CONSPIRATOR. Where parties conspire to commit a larceny evidence of the acts and declarations of one in promotion of the conspiracy are admissible against the other. In the instant case the evidence is reviewed and held to justify a finding of conspiracy by defendant to commit a larceny and to render the declarations of the co-conspirator admissible.

**Same:** HEARSAY EVIDENCE: PREJUDICE. On this prosecution for larceny, in which the state relied upon a conspiracy to commit the crime, there was evidence simply of the finding in a certain room of a collar of the size worn by defendant, and of a satchel previously seen in the possession of the co-conspirator: *Held*, that this was not sufficient proof of their occupancy of the room to render admissible and non-prejudicial the statement of officers, who located the stolen goods and arrested the parties, that they had previously heard that accused and a third person were occupying the room.

**Same:** INSTRUCTIONS. Where the court instructed that the defendant should be acquitted unless it was found that the larceny was committed on the date alleged, refusal to further charge that he could not be found guilty of any act done after that date was not erroneous.

**Same:** LARCENY: RECENT POSSESSION OF STOLEN PROPERTY: EVIDENCE: INSTRUCTION. On this prosecution for larceny, in which the state relied upon a conspiracy between the defendant and a third person to commit the crime, the evidence showed that the stolen goods were found in a certain room and in a satchel previously seen in the possession of the third person. The only evidence that defendant occupied the room was the finding of a collar therein of the size worn by him. *Held*, that the evidence was not sufficient to support an instruction on the unexplained possession of recently stolen property, and that the instruction given, to the effect that the finding of the stolen property in the room was presumptive evidence of defendant's guilt, was erroneous, because failing to require a finding that defendant and such third person acted in concert in the commission of the crime.

*Appeal from Linn District Court.*—HON. MILO P. SMITH,
Judge.

TUESDAY, JANUARY 14, 1913.

THE defendant appeals from conviction of larceny from a
building.—*Reversed* and *Remanded.*

*Crosby & Fordyce,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,*
Assistant Attorney-General, for the State.

LADD, J.—I.  The defendant and one Harry Borsky, alias
Ike Polsky, were jointly indicted for the larceny of several
bolts of silk from the store of Welsh-Cook
Company in Cedar Rapids.  The defendant
elected to be tried separately, and argues that
the court erred in receiving testimony of the
acts and declarations of Borsky in promotion of an alleged
conspiracy to steal silks from said store.  The evidence
tended to show that he and Borsky had registered under
assumed names at the Grand Hotel September 18, 1911, and
had occupied the same room until the afternoon of Septem-
ber 20th; that on September 19th at about 12:30 o'clock
defendant went to the second floor of said store and stood at
the silk counter for a few minutes examining the silk and
looking about the room, observed a clerk leave for lunch, and
talked with the one remaining, followed him to the blanket
counter, and told him he would not wait longer for his uncle,
and requested the clerk, if his uncle came, to say he would be
back about 1:30 o'clock.  He did not return, but on the next
day Borsky and Robinson came at about the same time—that
is, 12:30 o'clock—the former bringing from his room at the
hotel a large satchel.  This was set down at the top of the

1. CRIMINAL
   LAW : conspir-
   acy : evidence
   of co-conspir-
   ator.

stairs, and they advised the manager who had followed them that the firm of Robinson & Cone was transferring a stock from Sioux City to Davenport and they would like to look at blankets. Borsky represented himself as Cone and started for the blanket department with the only clerk on that floor; the other having departed for lunch, as on the day previous. Robinson talked with the sales manager for a few minutes, when the latter returned to the first floor. After looking at blankets near by, Borsky asked to see the woolen blankets, and the clerk took him to a distant part of the floor out of view of the silk counter, and there the latter examined the stock for ten or fifteen minutes. But he did not buy then, as his store was not ready. Requesting a list with prices and the clerk's name, he said he had not had dinner, and he would have to go, shook hands with the clerk several times, took his satchel, and departed down the elevator with Robinson. In the afternoon the clerk who had stepped out to lunch discovered that about fourteen bolts of silk were missing. On the afternoon of September 21st, at about 2:30 o'clock, Borsky called at the dry goods department of Rudge-Gunsel Company in Lincoln, Neb., and began negotiating for the sale of silks which he claimed to have received in a trade and later submitted samples of silks like those stolen. The buyer insisted upon seeing the goods. A deal was not made, but he saw Borsky and defendant together at the Lincoln Hotel the next morning. The defendant registered at the Savoy House at that place in the afternoon of the 22d and remained until the 25th, Borsky sharing his room, and on the later date they left and were seen thereafter entering the Star Rooming House, joining the hotel, two or three times. They were arrested at about 2 o'clock in the morning of September 27, 1911, and, upon searching room sixty-one of the Star Boarding House, the satchel Borsky had at the store in Cedar Rapids and several bolts of silk missed therefrom were found. A collar of size suitable for defendant was found in a hand bag in the room. From this evidence, the jury might well have inferred the existence of a scheme or

plan between Borsky and defendant to commit the offense, and, this being so, the rulings by which testimony of the acts and declarations of Borsky in promotion thereof was rightly admitted.

II.    John Schmitt, after testifying that he was a police officer of Lincoln, Neb., and that he was detailed to arrest defendant and locate the stolen silk, was asked

2. SAME: hearsay evidence: prejudice.

to "state whether or not prior to that time (when they were arrested) you had heard Lehlan and Polsky were occupying room sixty-one at the Star Rooming House." An objection "as calling for hearsay, immaterial, leading, and suggestive," was overruled, and the witness answered, "Yes, sir," and proceeded to testify of having searched the room. A similar question was propounded to W. T. Deveresse, the Omaha detective who located the alleged culprits, and over a like objection he answered in the affirmative. Had other evidence of such occupancy of the designated room been conclusive, the admission of this testimony as explaining the occasion for searching the room might not have been regarded as prejudicial; but no testimony was adduced tending to show that defendant or Borsky was ever in the room, save the finding in a grip of a collar which fitted defendant and the satchel previously seen in Borsky's possession. The room then could not properly have been assumed to have been in their occupancy, and this hearsay evidence might have and doubtless was given consideration by the jury in passing on this issue. The rulings were erroneous.

III.    There was no error in refusing to instruct, as requested by defendant, that the jury could

3. SAME: instructions.

not "find defendant guilty on account of any act of his done after September 20, 1911," for the jury was told that, unless found guilty of the larceny of the silk committed by some one on that day, he should be acquitted. This sufficiently guarded against the possibility of conviction for receiving stolen goods.

IV.    The seventh instruction given read: "It is a rule

that the unexplained possession of property recently stolen is

4. SAME: lar-
ceny: recent
possession of
stolen prop-
erty: evi-
dence: in-
struction.

presumptive evidence that the person in whose possession it is so found stole it; and if you find in this case, beyond a reasonable doubt, that shortly after the theft of the property described in the indictment, if there was a theft of it, or any portion of it was found in the possession of the defendant in Lincoln, Neb., or in the room which he was, or had been, occupying by himself or with his codefendant, and such possession has not been satisfactorily explained, such possession would be presumptive evidence of the defendant's guilt. And such presumption is not discharged or overcome by the fact that other goods not identified as belonging to the Welch-Cook Company were found at the same time and place.''

Though it might have been inferred that defendant was stopping at the Star Boarding House, there was no showing that he occupied room sixty-one when there. The mere fact that a sixteen-inch collar was found in a grip in that room and that defendant wore collars of that size was not alone sufficient to warrant such conclusion.

Another reason for disapproving this instruction is that it declares that the finding of the stolen property in the room occupied by himself and Borsky would afford presumptive evidence of guilt. This is not so unless the jury also found that the two were acting in concert, for the silks were found in the satchel identified as the one Borsky had had in the store. As these were in Borsky's recent possession, to render this binding on defendant as furnishing presumptive evidence of guilt against him, it must also have appeared that he was acting in concert with Borsky. *People v. Niclosi,* 34 Pac. 824; *State v. Raymond,* 46 Conn, 345; *Porter v. People,* 31 Colo. 508 (74 Pac. 879); *States v. Phelps,* 91 Mo. 478 (4 S. W. 119); *State v. Wohlman,* 34 Mo. 482 (86 Am. Dec. 117).

The requirement of such a finding was omitted from the instruction, and the error in so doing is not obviated by the previous instruction, as contended. Again, the possession is

said to be presumptive evidence unless explained. As no explanation was attempted, this may not have been prejudicial error. *Baldwin v. State,* 31 Tex. Cr. R. 589 (21 S. W. 679); 25 Cyc. 152. But it will be as well to instruct more fully on another trial. *State v. Bartlett,* 128 Iowa, 518; *State v. Kimes,* 152 Iowa, 240.

The court did not caution the jury not to consider the evidence of acts and declarations of Borsky alone in determining whether there was a conspiracy between him and defendant. Whether this omission, in the absence of a request, was error, we need not now determine, but mention the matter that it may not be overlooked on another trial.—*Reversed and Remanded.*