## WEISMAN v. UNITED STATES.[*]

(Circuit Court of Appeals, Eighth Circuit. August 28, 1924.)

No. 6602.

1. **Indictment and information** ☞70 — **Must state directly every essential element of offense.**

An indictment must clearly state all the material facts and circumstances embraced in the definition of the offense, directly and not inferentially or by way of recital, and, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication.

2. **Robbery** ☞17(6)—**Indictment not insufficient because of defects of form.**

In an indictment for robbery, the use of the words "against the person," instead of "from the person," is a defect of form only, not prejudicial to defendant, and under Comp. St. § 1691, does not render the indictment insufficient.

3. **Post office** ☞48(6)—**Indictment for robbing mail held sufficient.**

Counts in an indictment under Pen. Code, § 197 (Comp. St. § 10367), for robbing the mail, *held* sufficient.

4. **Robbery** ☞9—**Feloniously taking property from the presence of another is in law a "taking from the person."**

The felonious taking of property from the presence of its lawful custodian, by putting him in fear and jeopardizing his life, is in law a taking from the person.

5. **Larceny** ☞64(1)—**Possession of property recently stolen raises presumption of guilt.**

Possession of property recently stolen raises a presumption of guilt, which, in the absence of explanation, may authorize a jury to infer a criminal connection with its acquisition.

6. **Larceny** ☞64(4) — **"Exclusive possession" of stolen property is not necessarily in a single person.**

The term "exclusive" in law is not necessarily limited to one person, and while possession of recently stolen property, to raise a presumption of guilt, must be personal and exclusive, it is not necessarily the possession of a single defendant, but may be that of two or more.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exclusive Possession.]

7. **Post office** ☞50—**Instruction as to effect of possession of property stolen held proper in prosecution for robbing the mails.**

In a prosecution for robbing the mails, the evidence *held* to warrant an instruction that possession of the stolen property shortly after the robbery raised a presumption of guilt, where the jury were also instructed that, unless they were satisfied from all the evidence that defendant participated in the robbery, they could not convict, even though they found such possession by defendant.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Criminal prosecution by the United States against Dave Weisman. Judgment of conviction, and defendant brings error. Affirmed.

William Baer, of St. Louis, Mo. (Harvey & Baer, of St. Louis, Mo., on the brief), for plaintiff in error.

Horace L. Dyer, Sp. Asst. U. S. Atty., of St. Louis, Mo.

Before STONE and KENYON, Circuit Judges.

KENYON, Circuit Judge. Plaintiff in error, Dave Weisman, one William F. Doering, and William Williamson were indicted in the United States District Court for the Eastern Division of the Eastern District of Missouri. Williamson was acquitted by the jury by direction of the court. Plaintiff in error and Doering were convicted on six counts of the indictment. The facts show that on April 2, 1923, at about 6 o'clock in the morning, a number of men held up the armored truck in which United States mail was being transported from the post office in St. Louis to various substations, and took from those in charge of said truck its entire contents, consisting of stocks, bonds, and negotiable securities of the par value of over $2,000,000.

The first and second counts were based on an alleged robbery of the mails while the same was in the control and custody of Adrian G. Dorlac. The third charged the defendants with larceny of a mail pouch. The fourth, with knowingly receiving and concealing, and aiding in concealing, property stolen in the robbery. The fifth, with having in possession the property stolen in said robbery with knowledge that it had been stolen. The sixth, with having in possession a large quantity of registered mail matter stolen in the course of said robbery.

Both defendants were sentenced to 25 years' imprisonment upon the conviction under count 2 of the indictment, and 10 years

*Rehearing denied November 24, 1924.

upon count 1, and sentences of lesser terms upon the other convictions. All of the sentences, however, were to run concurrently with the sentence imposed against defendants on the second count of the indictment. The case is brought here, and reliance for reversal placed on two major propositions, viz.: (1) That counts 1 and 2 of the indictment are insufficient to charge the crime of robbery, for the reason that said counts fail to allege a taking from the person or presence of Adrian G. Dorlac, who was alleged to be in charge of the material stolen, and further that the allegations of both counts are so confused that they do not state a charge of robbery; (2) that the court erred as to plaintiff in error in its charge to the jury that the recent possession of stolen property raised a presumption of guilt, for the reason that there was no evidence of possession by plaintiff in error of the property stolen in the robbery in question, and therefore no basis for the charge of the court. Another point argued is the alleged error of the court in overruling defendant's motion at the close of the government's case to instruct a verdict of acquittal on each count.

I. The indictment as to counts 1 and 2 is based upon section 197 of the Penal Code (Comp. St. § 10367), which is as follows: "Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

These counts rest upon this part of the statute, "or shall rob any such person of such mail or any part thereof." The statute does not undertake to define robbery, but section 284 of the Penal Code (Comp. St. § 10457) defines it as follows: "Whoever, by force and violence, or by putting in fear, shall feloniously take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years."

The Supreme Court of the United States, in Collins v. McDonald, 258 U. S. 416, 420, 42 S. Ct. 326, 328 (66 L. Ed. 692), referring to this definition of robbery says: "This has been accepted as an accurate and authoritative definition of robbery from

Blackstone, book IV, p. 243 (Cooley's Ed.), to Bishop's New Criminal Law, vol. II, §§ 1177, 1178." In this same case, on page 420 (42 S. Ct. 328), the court says: "Taking property from the presence of another feloniously and by putting him in fear is equivalent to taking it from his personal protection and is, in law, a taking from the person. Men do not feloniously put others in fear for the purpose of seizing their own property."

34 Cyc. 1798, gives this definition: "To constitute robbery it is essential that there be a taking 'from the person.' To satisfy this requirement it is sufficient that property be taken 'in the owner's presence.' "

In Vane v. United States, 254 F. 28, 32, 165 C. C. A. 438, in an indictment for robbery of a custodian of mails the words of the indictment charging that defendants did wilfully, unlawfully and feloniously rob, were held sufficient.

[1] It is concededly the law that in an indictment the elements of the offense must appear; that it must set forth facts which it is alleged constitute the crime so clearly that the accused may know the nature of the charge he is called upon to face, in order not only that he may prepare his defense, but that a conviction will operate as a bar to another prosecution for the same offense, and as said in Brenner v. United States (C. C. A.) 287 F. 636, 640, "and so clearly that the court may be able to determine whether or not the facts there stated are sufficient to support a conviction." United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Winters v. United States, 201 F. 845, 120 C. C. A. 175.

The Supreme Court, in Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 37 L. Ed. 419, says "that all the material facts and circumstances embraced in the definition of the offense must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication. The charge must be made directly and not inferentially or by way of recital." See, also, Kellerman v. United States (C. C. A.) 295 F. 796; Fontana v. United States (C. C. A.) 262 F. 283.

[2] As to count 1 of the indictment, we may refer to the fact that the words "against the person" are used, instead of the words "from the person." Evidently this is an error of diction. The Compiled Statutes of the United States (section 1691) provide that no indictment shall be deemed

insufficient by reason of any defect or imperfection in form only, which does not tend to the prejudice of defendant. The particular manner in which a fact is stated is a matter of form. McGrath v. United States (C. C. A.) 275 F. 294. Further, the court properly charged the jury on the subject of robbery, and if the evidence was sufficient to sustain the verdict the mistake or error of statement was cured by the verdict. Lamar v. United States, 241 U. S. 103, 36 S. Ct. 535, 60 L. Ed. 912; McGrath v. United States (C. C. A.) 275 F. 294.

[3] Count 2 does not use the term "against the person." Testing the sufficiency of these two counts by the definition of robbery as laid down in section 284 of the Penal Code and approved as an accurate one by the Supreme Court in Collins v. McDonald, 258 U. S. 416, 42 S. Ct. 326, 66 L. Ed. 692, and by the holdings of the Supreme Court referred to as to the necessary allegations of an indictment, what is the result?

Count 1 of the indictment charges: "Defendants and others, on the 2d day of April, with force and arms, in and upon Adrian G. Dorlac, a person then and there having lawful charge, control, and custody of certain mail matters of the United States [description of mail matter], against the person and against the will of him, the said Adrian G. Dorlac, who was then and there in lawful charge, control, and custody of said mail matters, unlawfully, feloniously, and by putting in fear him, the said Adrian G. Dorlac, did rob, steal, take, and carry away, contrary to the form," etc.

Count 2 charges: "The defendants and other persons, on the day and year aforesaid, in and upon Adrian G. Dorlac, a person then and there having lawful charge, control, and custody of certain mail matters of the United States [description of mail matter], unlawfully and feloniously did make an assault, and the life of said Adrian G. Dorlac then and there in lawful charge, control, and custody of said mail matter as aforesaid, was then and there unlawfully and feloniously put in jeopardy by the use of dangerous weapons, to wit, pistols and sawed-off shotguns, then and there in the hands of defendants and others, and the said mail matters, as aforesaid, from the lawful charge, control, and custody and against the will of him, the said Adrian G. Dorlac, then and there unlawfully, feloniously, and by violence, and by putting in jeopardy the life of said Adrian G. Dorlac,

did rob, steal, take, and carry away, contrary to the form," etc.

[4] These counts allege that Dorlac had lawful charge, control, and custody of certain mail; that he was put in fear by defendants; that his life was put in jeopardy; that by violence and putting in fear, and by the threatened jeopardy, the mail matter in his lawful charge, control, and custody was unlawfully and feloniously taken away. The indictment does not in terms state that it was taken from his person. The taking, however, from his presence feloniously, by putting him in fear and by jeopardizing his life, of property of which he was in control, charge, and custody, was equivalent to taking it from his personal protection, and, as the Supreme Court said in Collins v. McDonald, supra, is in law a taking from the person. The allegations of these two counts fully apprised defendants of the nature of the crime with which they were charged, and the conviction thereon is unquestionably a bar to any other prosecution for the same offense. We have no difficulty in reaching the conclusion that counts 1 and 2 were amply sufficient to charge the offense of robbery from the mails under section 197 of the Penal Code—count 1, the lesser offense, the element of jeopardy of life not being included; count 2, the greater offense, such jeopardy being alleged.

II. It is earnestly contended by plaintiff in error that there is no evidence in the record sufficient to warrant the charge as to him as to possession of stolen property raising a presumption of guilt, and that the same should have been confined to Doering.

[5] Possession of stolen property, standing alone, does not establish guilt, but the possession of property recently stolen raises a presumption of guilt, which, in the absence of explanation, may authorize a jury to infer a criminal connection with its acquisition. Donegan v. United States (C. C. A.) 287 F. 641; Wilson v. United States, 162 U. S. 613, 16 S. Ct. 895, 40 L. Ed. 1090; State v. Guild, 149 Mo. 370, 50 S. W. 909, 73 Am. St. Rep. 395. It is the general language of the authorities that possession to warrant such instruction must be personal and exclusive, unless the evidence shows participation by the defendants in the larceny or robbery, or a conspiracy to commit it. People v. Mulvaney, 286 Ill. 114, 121 N. E. 229; State v. Lehlan, 158 Iowa, 183, 139 N. W. 475; Sparks v. State, 111 Ga. 830, 35 S. E. 654.

[6] The exclusive possession discussed in

the authorities as a necessity to the presumption of guilt is not necessarily the possession of a single defendant. Two or more may have the exclusive possession of stolen property. One defendant in the crime may hold the actual possession of stolen property for himself and other defendants. His possession under such situation would be a circumstance to be considered as against all the defendants for whom he possessed the stolen property. In State v. Raymond, 46 Conn. 345, it was claimed that the possession must be exclusive, and that, if another party was joint possessor with defendant, it could not be exclusive. The court sustained the instruction of the trial court that there might be an actual and joint possession in two persons which as to them is exclusive, and said: "The term 'exclusive' in law is not necessarily limited to one person."

In State v. Lehlan, 158 Iowa, 183, 139 N. W. 475, cited by plaintiff in error, the court referred to the fact of defendants acting in concert, and suggested that, if parties were acting together, then the possession of the stolen property by a partner in crime furnishes presumptive evidence of guilt as to defendant. See, also, Porter v. People, 31 Colo. 508, 74 P. 879; State v. Phelps, 91 Mo. 478, 4 S. W. 119; State v. Wohlman, 34 Mo. 482, 86 Am. Dec. 117. In Rosen v. United States, 271 Fed. 651, the property came into possession of defendants. They were associated together. It was held that the jury were warranted in finding both in possession.

[7] There is no direct evidence in this case that either one of the defendants convicted actually committed the robbery. No one specifically identifies them as present at the time, although witnesses do give descriptions of two of the men as to their height and probable weight. Seldom can there be in such cases identification of the features of those who pursue the pastime of robbing the mails, as generally their features are obscured from view. The evidence in the case is entirely circumstantial. It does not appear that Weisman lived at the home of Doering, where the stolen property was found, nor that he ever had the actual physical possession of the property. If this were all of the case, the instruction as to possession raising any presumption of guilt as to plaintiff in error would be erroneous; but it is not all.

We review somewhat the evidence. The headquarters seem to have been the house occupied by Doering at 23 Sunset avenue, St. Louis, Mo. When the officers searched the same April 19, 1923, they found the stolen property, and also found the place fully equipped with rifles, sawed-off shot guns, revolvers, ammunition, dynamite fuses, and other necessaries of the business in which some one connected with the premises was apparently engaged. When the officers were in this house, engaged in the search, Doering and plaintiff in error appeared together, coming from an automobile toward the house. Some one, evidently the defendant Williamson, who was in charge of the house, signaled from a window, and they retraced their steps toward the automobile. There seemed a complete understanding on the part of Doering, plaintiff in error, and Williamson as to the signals and their meaning. There was sufficient in the record to show that plaintiff in error was not a mere casual visitor at the Doering home. Before the robbery he had become acquainted at a downtown barroom with one Niedringhaus, a stockbroker, who was a witness in the case, and who apparently undertook to assist defendants in disposing of the stolen property. He brought Niedringhaus to meet Doering at his home. It appears from the evidence that plaintiff in error and Niedringhaus, previous to the robbery, often rode in plaintiff in error's automobile, and frequently stopped at the Doering home, which seemed to be a sort of general meeting place, and to have been Weisman's headquarters, as well as Doering's. The evidence shows a familiarity of Weisman with the Doering home and a close personal friendship with Doering. Weisman's automobile was kept at the garage on the Doering place.

The morning after the robbery plaintiff in error got in touch with Niedringhaus and arranged a meeting with Doering at Doering's home. Weisman did not use his automobile, with which he had frequently taken Niedringhaus riding, but took him out to Doering's in a taxicab. Doering, Weisman, and Niedringhaus spent an hour in the house on this occasion going over the stolen securities, and a list of them was made. Notwithstanding the fact that Weisman's car was in the garage in the Doering yard, Doering phoned for a taxicab, and Weisman and Neidringhaus returned to the city in the taxi. Niedringhaus being compelled to go to Kansas City on the night of the 4th, a few days afterwards Weisman, evidently becoming impatient, went to Kansas City to see what could be done about moving the securities, telling Niedringhaus that "the boys need the money." After the return of Niedringhaus from Kansas City, Weisman arranged

a meeting at the office of an attorney in Clayton, telling him over the phone that Doering wanted to talk to him. When Niedringhaus went to Clayton, he found Weisman in the attorney's office as arranged. There were two ladies present with Weisman, and when Doering came he took Niedringhaus into an adjoining room to talk with him, and suggested to him the wisdom of moving the securities, as the boys needed the money, and informed Niedringhaus, if he wanted to communicate with him, to get in touch with Weisman. The conversation was not carried on in the presence of Weisman, evidently because of the presence of other parties, as there had been no objection to Weisman's presence when the stolen securities were talked over and a list of them made at Doering's home shortly after the robbery. Later there was talk over the telephone between Niedringhaus and Weisman, in which Weisman told him that the boys had an "offer of fifty for the bonds," meaning 50 per cent. of the par value. Niedringhaus, in his talk with Doering that afternoon, told him of this, and Doering said, "All right." Weisman seems to have had something to say as to the figure at which the securities should be sold. He was apparently more than a mere agent of Doering.

The Weisman automobile is not identified as the one used at the time of the robbery to carry away the loot. It is in evidence, however, that it was a large, black, seven-passenger touring car, and that the car that came up to the truck, and into which the stolen property was loaded, was a large, black, seven-passenger touring car. Of course, there are thousands of large, black, seven-passenger touring cars, and this circumstance, standing alone, might have no weight; but the record shows that nearly every day prior to the robbery Weisman had taken witness Niedringhaus out in his car; that after the robbery he did not use it, but resorted to taxicabs, and took Niedringhaus home in a taxicab from Doering's place, when his car was there in the yard. Either the car was out of repair after the robbery, or there was some good reason for not using it. There is no showing in the record that the car was not in condition for use after the robbery. These were circumstances, in connection with others shown, bearing on Weisman's connection with the robbery. A jury had a right to give to these circumstances weight. It is in testimony that the plate on the automobile used to carry away the stolen property bore the Missouri state license No. 189,354. It was shown that this plate was stolen a short time before the robbery. The license plate on Weisman's car, at the time of the search by the officers, bore an Illinois license number. It is not explained just how a car, apparently in constant use in St. Louis, bore only the Illinois license number.

Dorlac, on the witness stand, identified one of the men engaged in the robbery as about 5 feet 8 inches in height, and weighing 135 pounds to 140 pounds. Cunningham identified one of the men as about 5 feet 6 inches in height, and weighing 125 to 130 pounds. Doering, Weisman, and Williamson were all asked to stand up in the courtroom for the purpose of identification during the examination of the witness Kaiser. The jury had an opportunity to observe the defendants. The record shows that Doering was an unusually tall man. The description did not fit him. Evidently the court did not consider it fitted Williamson, as the court ordered his acquittal. The record does not show that the description applied to Weisman, nor does it show that it did not. It may have done so, and the jury may have believed that the testimony did identify him. There was no explanation whatever of any of these circumstances.

While each separate circumstance may not be convincing, combined they make a chain of circumstances which, unexplained, would warrant a jury in finding that Weisman did participate in the robbery. Of course, Weisman may have merely acted as an agent of Doering to try and dispose of the securities; he may even have received the stolen goods and helped to secrete them, and yet he may not have had anything to do with the robbery, or have been guilty of robbery; but all of these circumstances were sufficient for a jury to believe otherwise, which evidently they did. The evidence in this case is as strong as that in Matthews v. United States, 192 F. 490, 113 C. C. A. 96, where this court sustained a conviction for robbery of the mails.

In Boehm v. United States (C. C. A.) 271 F. 454, the question of possession is discussed. The case arose out of a theft of automobile tires. They were found on the farm of plaintiff in error, some distance from his house. One witness had purchased a tire similar in appearance. Two tires had been sold by the plaintiff in error in June, 1919. Three tires were found on the premises in November, 1919. It was held that the evidence was competent for the jury's consideration on the question of possession; the court holding that, under the

circumstances, what might be deemed recent possession was a fact question for the jury.

In Barton v. United States (C. C. A.) 267 F. 174. 175, the question arose as to possession of an illicit still. The defendant was found at or near the still, and the court said: "The proximity of the accused to the place of the crime and the unlawful apparatus used in the perpetration of the crime, at or about the time of its perpetration, may by a reasonable inference raise the presumption of possession, and that the party so found was guilty of a participation in the crime charged, which required the possession and use of the property."

It will be observed from the instructions of the court that the question of considering the possession of stolen goods was carefully guarded; the court saying to the jury: "And if you shall find from all the facts and circumstances in the case that defendants did not commit, or that they did not participate in, the robbery mentioned in the evidence, then you cannot convict them, or either of them, of the robbery, even though you may believe and find from the testimony that they subsequently came into and were in possession of property which was stolen in such robbery."

We believe, as heretofore indicated, that the evidence was sufficient for the jury to find that plaintiff in error and Doering were acting together, not only in secreting the stolen property, but in the commission of the alleged robbery, and that the possession of the stolen property by Doering was a joint possession with plaintiff in error. The instruction of the court was therefore warranted.

There are no errors appearing in this record that affect the substantial rights of plaintiff in error, and the judgment of the trial court is affirmed.