Don L. EVANS, Jr., and Everett M. Sells, Appellants,

v.

UNITED STATES of America, Appellee.

No. 21471.

United States Court of Appeals
Fifth Circuit.

Aug. 23, 1965.

Rehearing Denied Oct. 13, 1965.

James S. McGrath, Walter M. Sekaly, Beaumont, Tex., for appellants.

Harry Lee Hudspeth, Asst. U. S. Atty., W. D. of Texas, San Antonio, Tex., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before BROWN and GEWIN, Circuit Judges, and KILKENNY,* District Judge.

KILKENNY, District Judge:

## STATEMENT

Each appellant was convicted, in a jury trial, on 45 counts of an indictment charging violations of the Internal Revenue Code. Four of those counts charged willful failure to register with the District Director of Internal Revenue, as required by the provisions of 26 U.S.C. § 4412. Four counts charged the appellants with willful failure to pay the special tax required by 26 U.S.C. § 4411. Thirty-seven of the counts charged appellants with engaging in the business of accepting wagers and willfully failing to file excise tax returns as required by 26 U.S.C. § 4401. Callender, who was indicted and jointly tried with appellants, was granted a judgment of acquittal in the lower court.

* Of the District Court of Oregon, sitting by designation.

## MOTION TO DISMISS

Prior to trial, each of appellants moved for a dismissal of counts 1 through 37 of the indictment, on the ground that each failed to state the location at which the appellants were alleged to have been engaged in accepting wagers. Appellants' theory is that the indictment did not state facts sufficient to show a violation of any of the statutes in question, without alleging the place where the wagers were accepted. These failures, urge appellants, also present jurisdictional defects. We are not impressed with the arguments. The counts charge that the returns were required to be filed with the District Director at Austin, Texas. While we must concede that the indictment is inartfully drawn and could not serve as a model, its defects are not fatal.[1] The gravamen of the offense is engaging in the business of accepting wagers and failing to pay the excise tax. The allegations of an indictment are sufficient if they adequately apprise the accused of the charges against them. Cagnina v. United States, 223 F.2d 149 (5th Cir. 1955). The jurisdiction and venue for willful failure to do an act required by law, lie in the district and division where the act was required to be done. Yarborough v. United States, 230 F.2d 56 (4th Cir. 1956); Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

Each of the challenged counts charge the essential facts with sufficient clarity so that a judgment rendered thereon, would be a complete defense to a second prosecution for the same offense. Goldberg v. United States, 277 F. 211 (8th Cir. 1921); Weisman v. United States, 1 F.2d 696 (8th Cir. 1924); Armour Packing Co. v. United States, 153 F. 1, 14 L.R.A.,N.S., 400 (8th Cir. 1907), cited by appellants, and other such cases, are here of no significance. The charges in the questioned counts are adequate.

## SUFFICIENCY OF THE EVIDENCE

In our analysis of the evidence, we are asked to distinguish between the force and effect of the record as to Evans and as to Sells. This is particularly true with reference to the first 37 counts.

The statutes [2] and Wagering Tax Regulations,[3] on their face, and as construed in United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), point the finger of violation at him who is the "banker," who is "engaged in the business of accepting wagers" and the "writer" who "[receives] wagers for or on behalf of [the banker]."

The record contains substantial evidence that Evans was engaged in the business of wagering during the years 1955 and 1957. The partnership, of which he was a member, filed excise tax returns on such a business for each month from January, 1956, through, June, 1957. In June, 1957, a meeting was held by the members of the partnership, including Evans, at which time the partners agreed not to renew the partnership wagering tax stamp, nor to renew the wagering tax stamps held by the members. The records of the District Director of Internal Revenue for the indicated district show no registration, payment of special tax or payment of wagering excise tax by Evans from Oc-

1. TYPICAL COUNT. (Count One)
"That during the month of October, 1957, HARLAND R. CALLENDER, DON L. EVANS, JR. and EVERETT M. SELLS were engaged in the business of accepting wagers by reason of which fact they were required by law to make an excise tax return to the District Director of Internal Revenue, Austin District, Austin, Texas, within the Austin Division of the Western District of Texas, on or before the 30th day of November, 1957, stating the amount of said excise tax due the United States of America for said month of October, 1957, and well knowing all of the foregoing facts, they did wilfully and knowingly fail to make said return to the District Director of Internal Revenue, or to any other proper officer of the United States, in violation of 26 U.S.C. § 7203."

2. 26 U.S.C. §§ 4401, 4411, 4412, 4421 and 7203.

3. §§ 44.4401, 44.4403 and 44.6011.

tober, 1957, until December, 1960, the period covered by the indictment. About the time of the dissolution, Evans took possession of certain partnership property and paid a retiring partner the sum of $1,000.00 for his share of the partnership equipment, each $500.00 payment, on this obligation, being made with a "shoe box" full of dollar bills and small change. Evans took part in numerous meetings with persons connected with the numbers or policy enterprise, one of the witnesses testifying that he secured bags of money and bets from those writing the policies and delivered them to Evans in a certain parking lot. At the same time, Evans gave this witness a bag of policy slips. One witness testified Evans was the only person who ever ordered supplies, such as manifold books, scratch pads, double carbons and other materials used in policy operations and that Evans paid for these supplies with cash consisting of coins in rolls and one, five and ten dollar bills, sometimes amounting to several hundred dollars. Evans concedes that he filed income tax returns for 1958 reporting income from "gaming," and in 1959 income from "cards and dice games." Additionally, there was evidence that Evans was involved in the "policy" game prior to 1960 in Beaumont, Texas, in association with Sells. The record contains ample evidence that a lottery business was operated in the Beaumont area prior to July, 1957; that Evans was a partner in the business; that the business continued to operate through 1960, even though some of the partners made an affirmative decision in June, 1957, to discontinue registering with the Internal Revenue Service and paying the wagering taxes.

The jury could well find that the evidence excluded every reasonable hypothesis except that of guilt on the issue of whether Evans was "engaged in the business of accepting wagers," and whether he was a "banker," within the meaning of the statutes and the regulations.

 Now with reference to the evidence against the appellant Sells. He challenges the sufficiency of the evidence to show that he was anything other than a "pick-up" man, within the meaning of the decision in United States v. Calamaro, supra. Furthermore, he claims there is no evidence to show that his failure to register, pay the special tax, or to file the excise tax return was willful. We disagree. Obviously, the jury was impressed with the testimony of Lucy Martin that she was hired as a "writer" by Sells, obtained the necessary money from him to pay off the "big hits," that such instructions as she had with reference to her duties, were received from him and that the supplies with which she carried on her work were by him delivered to her. The jury could well have believed the testimony of Holland, who testified that he acted as a "pick-up" man for Sells, that he was paid by him, that he worked for Sells for approximately four months as a "pick-up" man. Henrietta Caston, likewise, testified that she was "writing" for Sells and that he paid her salary. There was substantial evidence that Sells gave orders on when to "cut off" for the time being, or quit writing policies for the time being. This, and other evidence in the record, was sufficient to take the case to the jury on the question of Sells' "proprietary interest" in the transactions. On this evidence, direct and circumstantial, the jury could well find that it excluded every reasonable hypothesis except that of guilt, within the meaning of Hamilton v. United States, 304 F.2d 542, 545 (5th Cir. 1962). That being true, we invoke the rule stated in Edwards v. United States, 334 F.2d 360 (5th Cir. 1964), that a defendant, under circumstances similar to those involved in this case, has a burden of going forward with the evidence, to show that the acts were not willful. The functions and duties of Sells bear no resemblance to those of a mere "pick-up" man for a "banker," whose status was discussed in Calamaro.

## SEVERANCE

 Each appellant complains of the failure of the trial court to grant him a separate trial. A like contention was

made, under a similar state of facts, in Daley v. United States, 231 F.2d 123 (1st Cir. 1956), cert. denied 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956). There, seven defendants were charged in seven separate informations with willful failure to register and pay a special tax before engaging in the business of accepting wagers. Later, under Rule 13, Federal Rules of Criminal Procedure, the seven informations were consolidated for trial. The consolidation was upheld on the ground that participation by defendants in gambling transactions at the same locations was the "concluding element" of the crimes with which all were charged. Rule 8(b) permits the joinder in the same indictment, or information, of two defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense. Appellants argue that before such a joinder can be upheld, a conspiracy count must be involved. The authorities hold otherwise. Guon v. United States, 285 F.2d 140 (8th Cir. 1960); United States v. H. J. K. Theatre Corp., 236 F.2d 502 (2d Cir. 1956); Wiley v. United States, 277 F.2d 820 (4th Cir. 1960), cert. denied 364 U.S. 817, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960). Rules 13 and 8(b) were patterned for the express purpose of promoting efficiency and economy in the trial of litigation and thus avoid a multiplicity of trials. These objectives were accomplished in this case without substantial prejudice to the rights of either defendant. We find no abuse of discretion in the action of the trial judge in denying the motion for separate trial. The contention is without substance.

## VARIANCE

 Appellants charge a fatal variance between the allegations of the indictment and the court's instruction which permitted the jury to convict ei-ther appellant, should they find that he had a "proprietary interest" in the numbers business, irrespective of whether he was found to be a "banker" in such business. Appellants point to certain language in the Calamaro decision which would lend some credence to their position. The instruction,[4] of which appellants complain, follows the language, and the substance of the decision in Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). That decision, and the decisions of other federal courts, construed the statutes and regulations to cover three classes of persons in a gambling enterprise, who are subject to prosecution, i. e. "bankers," "writers" and persons having a "proprietary interest." United States v. Marquez, 332 F.2d 162 (2d Cir. 1964); United States v. Whiting, 311 F.2d 191 (4th Cir. 1962), cert. denied 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766 (1963); Merritt v. United States, 249 F.2d 19 (6th Cir. 1957). The charging part of each count, in our opinion, was sufficient to notify the defendants of the statutes and regulations under which they were prosecuted. The indictment in this case was returned over three years after the United States Supreme Court decision in the Ingram case. Appellants would be presumed to know that under the allegations of the indictment they might be convicted as a "banker" or a "writer" or a person having a "proprietary interest."

 Appellants complain of the failure of the trial court to define the phrase "proprietary interest." Appellants did not request a definition. Furthermore, it is assumed that the jury gave the phrase its common, ordinary meaning, such as "one who has an interest in, control of, or present use of certain property." Certainly, the phrase is not so technical, or ambiguous, as to require a specific definition. Attention

4. "The conviction of either defendant on any count of the indictment would be justified only if he is found to be a 'banker' or to have a proprietary interest in the operation. One who does nothing more than act in the capacity of a mes-senger from the writer to the banker and who has no proprietary interest in the operation, is not required either to pay the special tax or to file the excise tax return or to register as provided in the law I have given you."

is called to the fact that the trial court was careful to distinguish between one with a "proprietary interest" and one who was a mere "messenger," or "pick-up" man within the meaning of Calamaro. This does not mean that we frown on a trial court defining such words or phrases as a "banker" or "proprietary interest" or "writer." It occurs to us that proper definitions of those words or phrases could be of assistance to a jury.

 Appellants say that there was a fatal variance between the dates charged in the indictment and the court's instruction that the Government was not required to prove the "exact dates" alleged in the indictment. A more precise statement of appellants' contention would be that the lower court erred in instructing the jury that the Government was not required to prove exact dates as alleged in the indictment.

Although conceding that, as a general rule, the court's instruction correctly stated the law, the appellants urge that the Government, having chosen to be specific in the indictment, as to each month in which violations were claimed, that it was obligated to prove that appellants committed such an act in that particular month. Keeping in mind that excise tax returns were required to be filed throughout the period covered by the indictment, we are convinced the evidence shows some type of action by defendants, in each month covered by the indictment. That showing was sufficient. Hale v. United States, 149 F.2d 401 (5th Cir. 1945), cert. denied 326 U.S. 732, 66 S.Ct. 40, 90 L.Ed. 436 (1945). Under the court's instructions, the jury was required to consider each count separately and convict only if all elements of each count were proven beyond a reasonable doubt. This required the jury to actually determine when each offense was committed.

## PARTNERSHIP INSTRUCTION

 Appellants urge that there was a variance between the indictment and the court's instruction and between the evidence and the court's instruction on the question of whether a partnership existed. Without question, the original charge [5] left something to be desired. Appellants, outside of the presence of the jury, excepted to this charge on the ground that if it referred to the former partnership which had been dissolved it was misleading, and could cause a jury to infer that there was some evidence of a partnership between Sells and Evans. The court conceded that his original instruction might be misconstrued and upon returning to the courtroom, gave the jury a supplemental instruction which, in our opinion, met all objectionable features of the original charge.[6] No objection was made, nor exception taken, to this supplemental instruction. Generally, failure to call the trial court's attention to an alleged error prevents a party from presenting that issue on appeal. Smyly v. United States, 287 F.2d 760 (5th Cir. 1961), cert. denied 366 U.S. 930, 81 S.Ct. 1654, 6 L.Ed.2d 391 (1961); Thomas v. United States, 287 F.2d 527 (5th Cir. 1961), cert. denied 366 U.S. 961, 81 S.Ct. 1923, 6 L.Ed.2d 1254

5. *"There has been some evidence of a partnership. A partnership is a contract of two or more competent persons, to place their money, effects, labor, and skill in lawful commerce or business, and to divide the profit and bear the loss in certain proportions."* (Emphasis supplied.)

6. "Gentlemen, in giving you the charge, I charged you as to what a partnership is, and I think I said something to the effect that there was some evidence in this case that there was a partnership. What I was referring to there was:

There was some evidence that there was a partnership at one time, that existed between several people prior to June, 1957; as to whether any other partnership existed is a matter for you to determine, and I don't want you gentlemen to be under any misapprehension or think that I am attempting to tell you that one was in existence or one was not in existence. That is exclusively within your province. You can disregard all comments of the Court in arriving at your own decision as to what the facts are. All right, gentlemen, you may go out to the jury room."

(1961), rehearing denied 368 U.S. 884, 82 S.Ct. 119, 7 L.Ed.2d 85 (1961).

A complete review and analysis of the record convinces us that none of the assignments of error warrants a reversal. In our view, each defendant had a fair and impartial trial.

The judgments of conviction are affirmed.