(Decided March 24th, 1896.)

## THOMAS F. THOMAS, Officer of Registration, et al. *vs.* BRAINARD H. WARNER.

*Election and Voters—Residence—Change of Domicile.*

The idea of residence is compounded of fact and intention; to effect a change of it there must be an actual removal to another habitation and there must be an intention of adopting the new abode as a place of fixed present domicile.

A resident of Washington City, D. C., purchased a house and lot in Montgomery County, Maryland, in 1892, and occupied the same with his family from July to November of that year, when he returned to his Washington residence for the winter. In each of the three following years he spent from four to six months in Montgomery County, and the remainder of the year in his Washington house. He paid taxes upon his personal property in Washington City, and he continued to live there under the same circumstances as before his purchase of the property in Montgomery County. *Held*, that he had not acquired a residence in Montgomery County, and was not entitled to be registered as a voter there under the constitutional provision which requires, as a condition of the right to vote, residence in the State for one year and in the county for six months, next preceding the election.

Appeal from the order of the Circuit Court for Montgomery County (LYNCH, J.), directing that the name of B. H. Warner be placed upon the list of qualified voters of that county. The facts appear in the opinion of the Court.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*E. C. Peter* and *Alexander Kilgour* for the appellants.

The Act of 1890, chap. 573, sec. 14, is constitutional in its entirety. *Lancaster* v. *Herbert,* 74 Md. 334. The appellee having made the affidavit prescribed by the statute, about Nov. 16, 1894, removed from his dwelling place in Montgomery County to his domicile in Washington, D. C., where he continued to live with his family until May 29, 1895, when he returned to his home in Montgomery County, having in the meantime spent but one night therein as the guest of the lessee thereof, for the purpose of complying with the requirements of the registration law. The appellee having removed from Maryland and taken up his abode in Washington, and having failed to return to his dwelling place in Maryland on or before six months next preceding the election held on November 5, 1895, by force of the provisions of the statute he was not entitled to be registered as a qualified voter in the State of Maryland.

But even if the appellee had complied with all of the requirements of the statute, still he was not entitled to be registered as a qualified voter in Montgomery County, because he did not possess the qualifications as to residence prescribed by section 1 of Article 1 of the Constitution. Prior to July, 1892, the appellee's residence and domicile had been continuously for a number of years in the city of Washington. Since July, 1892, he has continued to pay taxes on his personal securities in the District of Columbia ; he has at all times maintained his Washington house, furnished and ready for occupation, and, as evidenced by his acts, whenever he has removed therefrom, in the late spring or early summer, it was with the intention of returning

thereto in the fall, and he has actually resided in his Washington house the major portion or at least half of each year. The appellee not having removed to this State with the *bona fide* intention of abandoning his home in Washington, and of making this State his actual home in the sense of having no other home, he has not acquired such a residence in Montgomery County as entitles him to exercise the right of suffrage therein. *Shaeffer* v. *Gilbert*, 73 Md. 71.

*Ashley M. Gould* and *Marion Dorian* for the appellee.

Mr. Warner, the appellee, came to Maryland in 1890, bought land, built a dwelling house and moved his family into it. These facts raise a presumption that he thereby initiated a residence in this State. "The place where a person lives is taken to be his domicile until facts adduced establish the contrary." *Mitchell* v. *United States*, 21 Wall., 350. "The place of residence is *prima facie* the domicile, unless there be some motive for that residence not inconsistent with a *clearly established intention* to retain a permanent residence in another place." *Ennis* v. *Smith*, 14 Howard, at p. 423 ; *Wharton, Conflict of Laws*, sec. 55 *a.*

Actual residence raises the presumption that it is *animo manendi*. *Rogers* v. *The Amado*, Newb., 400. Prior to the passage of the Registration Act of 1890, his removal to Washington in the fall of that year to spend the winter months, if that removal was made in pursuance of a fixed intention to return, would not have deprived him of his residence and right to vote in Maryland. *Ringgold* v. *Barley*, 5 Md. 186. This continued to be the law after the passage of the Registration Act of 1890 ; that act merely changed and limited the evidence necessary to explain the removal. *Sutherland* v. *Norris*, 74 Md. at p. 331.

To conform to this change in the rules of evidence, the appellee (who had returned to his home in May, 1894, after spending the preceding winter in Washington), when about to leave his home to spend the following winter of 1894-'95 in Washington, made and filed the affidavit required by

section 14 of the Registration Act to explain this temporary removal. As this Court said in *Bowling* v. *Turner*, 78 Md. at p. 600: " The statute allowed him to show by his own affidavit that he did not intend to change his legal residence." This affidavit by its terms is explanatory and declaratory of the intent with which the appellee had theretofore lived in Maryland. It also prevented the loss of his Maryland residence and citizenship, which continued during the period of his temporary absence as if he had been physically present at his home in this State. It follows that appellee had a continuous legal residence in this State and in Montgomery County, from May, 1894, to November, 1895. This entitled him to registration. *Story, Conflict of Laws*, sec. 47. *Burnham* v. *Rangely*, 1 W. and M. 7 ; *Harvard College* v. *Gore*, 5 Pick., 370.

In this case, the filing of the affidavit required by the act should receive great weight as showing the intention of appellee in the choice of his residence, especially as his own declarations and statements of his intention, which would formerly have been admissible, are rendered inadmissible by the statute. The non-payment of personal taxes in Maryland is no negation of residence there. It is only one circumstance, and is outweighed by the express declaration of choice of residence. *Guier* v. *O'Daniel*, 1 Binney, 349. But it is respectfully submitted that this requirement of section 14 of the Registration Act, necessitating a return to Maryland six months before an election in order to preserve the right of suffrage, violates the Constitution. While this Court has upheld the registration law in several cases, no case has been decided in which the attempt to deprive a citizen of his highest political rights was based solely on this provision of the law. In *Sutherland* v. *Norris, supra*, this Court sustained the affidavit feature of the law on the ground that it added no qualification to that of being a " resident," but was merely a regulation of the evidence to establish residence. The above provision is more than a change of an established rule of evidence. When the Con-

stitution was adopted "residence" had a definite legal meaning, and a "resident" of Maryland had definite legal rights, not the least important of which was the freedom of movement and action characteristic of a free citizen of a free State.   He could go out of the State and return to it as he pleased and when he pleased, and, if he maintained the purpose of returning, still retain his political rights and citizenship.   Mere absence from the State, however it might be prolonged by the necessities of health, pleasure or business, did not destroy his residence here or his citizenship, provided he retained the intention of returning.   *Langhammer* v. *Munter*, 80 Md. 518.

BRYAN, J,, delivered the opinion of the Court.

It was decided after proper proceedings, in the Circuit Court for Montgomery Connty, that Brainard H. Warner should be registered as a voter.   If he had been a resident of the State of Maryland for a year, and of Montgomery County for six months next preceding the ensuing election, he was entitled to be registered, but not otherwise.

We will examine the evidence offered to prove residence. It was shown that from the year eighteen hundred and eighty-five to eighteen hundred and ninety-two, he resided continuously at No. 2100 Massachusetts avenue, Washington, D. C. ; that in the spring of eighteen hundred and ninety-two he purchased land in Montgomery County, and built a dwelling-house thereon ; that about July of that year he, with his family, moved to this house from his house in Washington and remained there until November, when he returned with his family to Washington ; that he left two minor sons in his house in Montgomery, with a family to care for them, and that they remained there until the next spring ; that he and his family, with the exception of his two sons, occupied his Washington house continuously until May or June, eighteen hundred and ninety-three, when he removed to the Montgomery house, which he continued to occupy until October or November of that year ; he then

returned with his family to his Washington house, where he continued to live until about May, eighteen hundred and ninety-four, when he closed his house in Washington and returned with his family to the Montgomery house, and continued to live there with his family until about the sixteenth day of November of the same year ; he then closed his house in Montgomery and returned to his Washington house, where he continued to live with his family until about the twenty-ninth day of May, eighteen hundred and ninety-five, when he closed his house in Washington and returned to his house in Montgomery, where he and his family continued to lived until the day this testimony was taken, which was on the first day of November of the same year ; that in February, eighteen hundred and ninety-five, he rented his Montgomery house to a friend of his, a Mr. Upshur, who continued to occupy it, as a tenant, until the twenty-fifth of May of the same year ; that on the second day of May he spent the night in the house as a guest of Mr. Upshur, to comply with the provisions of the registration law ; and that he paid taxes in the District of Columbia on his bonds and personal securities.    Warner, on the sixteenth of November, eighteen hundred and ninety-four, made before the Clerk of the Circuit Court for Montgomery County, the affidavit required by the Act of 1890.

Warner was undoubtedly a resident of Washington from eighteen hundred and eighty-five to eighteen hundred and ninety-two.    It was in his power to remove his residence to Maryland if he thought proper to do so.    It was a very easy thing to do.    If he had broken up his establishment in Washington, abandoned his residence there and made his home in Montgomery, there could have been no question about the matter.    But sometimes the change of residence cannot be proved by clear and unambiguous evidence.    It must, however, always appear that the former residence has been abandoned.    There must be an actual acquisition of a new abode ; and in the case of a married man the settlement of the family there with all the incidents and associations

belonging to a home according to their circumstances.  The idea of residence is compounded of fact and intention ; to effect a change of it there must be an actual removal to another habitation, and there must be an intention of remaining there.   It is not required that the purpose to remain shall be unalterable ; for a person may change his residence whenever his wishes or his interests may induce him to do so. But there must be an adoption of the new abode as a *place of fixed present domicile ;* it would ordinarily be the " centre of his affairs," and the place where the business of his life was transacted.   Of course, no one thinks that a man is obliged to remain at home as if he were a prisoner.   His business might require him to be absent on frequent occasions for longer or shorter periods.   But his home is the place where he and his family habitually dwell ; which they leave for temporary purposes, and to which they return when the occasion for absence no longer exist.   It is not inconsistent with the maintenance of residence that the whole family should make visits to other places extending through great lengths of time, provided there is a definite and settled purpose, continuous and unchanged, to return.   One of the marked evidences of residence is that the person claiming it identifies himself and all his interests with his new place of abode, and exercises the rights and performs the duties of a citizen.

We have seen that Mr. Warner's election to change his residence would not be sufficient without making the new habitation *a place of fixed present domicile.*   Now, we see in the evidence no change in the course of his life in Washington after he purchased the land and built the house in Montgomery.   He continued to live at his former dwelling, and as far as we can see from the evidence under the same conditions and circumstances.   He paid taxes on his personal property in the same way as formerly, as only a resident is required to do ; and there is no external mark or indication which would designate him as a transient dweller or sojourner.   Although he and his family paid visits to his

country house, we have seen that such visits were by no means inconsistent with a residence in Washington. They were no longer in duration than those which are frequently made by families who wish to escape from the discomforts of the summer and early fall in large cities; while if the fixedness of domicile is to be measured by the length of time the occupation continued, it was shorter during the three years of alleged residence in Montgomery than the time spent in the Washington house. If the four months, five or six months, and six months spent in Montgomery, during the years ninety-two, ninety-three and ninety-four, respectively, tend to show permanency of residence there; the eight months, five or six months, and six months spent in the Washington house during the same years, respectively, countervail and overthrow this inference, and establish with greater reason the continuance of the Washington residence. JUDGE STORY tells us that: " In a strict and legal sense that is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning (*animus revertendi*)." We find it impossible to infer that these conditions are fulfilled in the case of the Montgomery house.

As Mr. Warner never acquired a residence in Montgomery County, the affidavit which he made before the Clerk of the Circuit Court is of no avail.

The decision of the Court below must be reversed.

*Reversed and remanded.*

(Decided March 24th, 1895).