# DOWNS *v.* DOWNS.

### DIVORCE; RESIDENCE AND DOMICIL; FRAUD.

1. In this District in a divorce suit in which is involved the question of whether the complainant was a resident of this District or of the State of Maryland at the time the suit was instituted, the matter of residence will be regarded as the equivalent of domicil; and in contemplation of the laws of both jurisdictions residence requires and implies a fixed place of abode with intention to remain permanently or at least indefinitely.

2. In suits relating to taxation, right of suffrage, divorce, limitations of actions, etc., the term "residence" is used in the sense of "legal" residence, that is, the place of domicil or permanent abode as distinguished from the place of temporary residence.

3. Where in a divorce suit the question is as to whether the complainant, the husband, was a resident of this District at the time he brought the suit, as required by D. C. Code, § 971, and it appears that for a year or two prior thereto he lived part of the time in this District and part of the time in Maryland, and in the latter jurisdiction he registered as a voter and voted, having satisfied the board of registration there that he was entitled to vote, and was there a voter at the time of bringing the suit, and it also appears that in that jurisdiction the same prerequisite of residence is required of a voter as

DOWNS *v.* DOWNS.

is required here for divorce, he cannot be said to have been a resident of this District within the meaning of that section; and he cannot be heard to say that by judicial decision in Maryland under such conditions as are shown by the evidence, he should not have been permitted to vote in Maryland, in view of the fact that he was allowed to vote and did vote there. If it was through his fraud that he procured himself to be registered as a voter there, he cannot be allowed to establish his own infamy here, while if he presented his case honestly there his claim of residence here is devoid of foundation in fact.

No. 1392.  Submitted March 10, 1904.  Decided April 5, 1904.

HEARING on an appeal (specially allowed) by the defendants from an order of the Supreme Court of the District of Columbia overruling their pleas to a petition for divorce and giving them leave to answer.                                *Reversed.*

The COURT in the opinion stated the case as follows:

The appellee, N. Carroll Downs, a native of Maryland and for many years exercising the right of suffrage in that State, but claiming also to be now and to have been for more than two years prior to the institution of these proceedings, on September 25, 1892, a resident of this District, filed his petition in the supreme court of the District of Columbia for a divorce from the bond of marriage subsisting between him and the appellant Lulu May Downs, on the ground of her alleged adultery with her co-respondent in the cause. The respondents severed in their defense. Each filed pleas to the effect that the petitioner or complainant, at the time of the institution of his suit, was not a resident of the District of Columbia, but of the State of Maryland. These pleas were interposed in pursuance of § 971 of the Code, which provides that—

"No decree of nullity of marriage or divorce shall be rendered in favor of any one not a resident of the District of Columbia, and no divorce shall be decreed in favor of any person who has not been a bona fide resident of said District for at least three years next before the application therefor, for any cause which

shall have occurred out of said District and prior to residence therein."

Issue was joined on these pleas, and testimony was taken. By this testimony certain salient facts were developed, which are practically undisputed.

Previously to the month of May, 1901, the appellee, N. Carroll Downs, lived at No. 12 B street N. W., in the city of Washington, with a wife and child. Whether he regarded this city as up to that time his legal place of residence does not appear distinctly from the record before us, although there is some intimation that he had always maintained a legal residence in Maryland and had voted in that State. In the month and year mentioned, dissension having arisen between him and his wife, they broke up their domestic establishment. She went to reside somewhere in the same neighborhood, and he rented two rooms in the city of Baltimore, Md., whither he removed part of his furniture, and also rented two rooms on California avenue, in this city, whither he removed another part of his furniture. He seems thereafter to have divided his time between the city of Baltimore and this city, although the preponderance of testimony is that he spent the greater part of his time in this city, where he was and seems yet to be employed as clerk on one of the committees of the Senate of the United States and as private secretary to one of the Senators.

Political reasons appear to have determined his removal to Baltimore. He desired to vote there, and he became active in the politics of that city. The woman in whose house he had rented rooms having failed to give his name as that of a resident there to the police for the census enumeration, which was made there as preliminary to registration as a voter, he instructed her to give his name thereafter as such resident; and, notwithstanding this omission, he went before the board of registration and caused his name to be entered on the list of registered voters as a resident of the State for thirty-eight years, which was, at the time, the whole duration of his life; as a resident of the legislative district for six months, and as a resident of the precinct where he was registered for the term of six months; and it is

conceded that he voted in Baltimore in the same year, in No-
vember of 1901; and it is also sufficiently shown that he had
voted at the same place in the election of the previous November
of 1900, and subsequently in the election of November, 1902.

Upon this testimony the court below, basing its opinion main-
ly upon the decision of the court of appeals of Maryland in the
case of *Thomas* v. *Warner,* 83 Md. 14, 34 Atl. 830, held that
the action of the appellee was insufficient to gain for him a
domicil or residence in Maryland, and that he remained a resi-
dent of the city of Washington at the time of his filing his peti-
tion in this case; whereupon it overruled the pleas and gave the
defendants leave to answer. From the order entered in the
premises the defendants sought and were allowed a special ap-
peal to this court, and it is this appeal which is now before us
for determination.

*Messrs. Thompson & Laskey* and *Mr. Charles H. Merrilat* for
the appellants.

*Mr. John Ridout,* for the appellee:

1. The residence required by the "divorce statute" does not
necessarily mean the technical legal domicil, but does mean that
locality where the social life of the party is lived, and that local-
ity where the greatest publicity will be given by litigation con-
cerning his status. The fact that, on more than one occasion,
appellee voted in Maryland is indicative, undoubtedly, of his
intention to acquire a voting residence in that State, and of the
belief that he had done so, but it is submitted that it is not at all
significant as to his actual change of residence, in the sense
of the divorce law. That there may be a residence in one locality
and a technical legal domicil in another is established by the fol-
lowing cases: *United States* v. *Nardello,* 4 Mackey, 503; *United
States* v. *Cross,* 20 D. C. 365; *Tipton* v. *Tipton,* 87 Ky. 243.

2. But if it should be held by the court that the word "resi-
dence" in the divorce statute is equivalent to "domicil," then it
is confidently submitted that there has, in this case, been no
change in the domicil of the appellee. It is conceded and shown
by the record that in May, 1901, the appellee was, and had for

about thirteen years been, domiciled in the District of Columbia.

Upon the record it is submitted that the intention of the appellee was limited to the acquisition of a voting domicil, and that he understood that such a domicil and residence were different in their meaning; and that he never had any intention of changing his residence, in the popular acceptation of the term. Assuming, however, for the purpose of the argument, but not admitting, that his intention was to change both his domicil and residence, it is submitted that, in order to make such a change effectively, it was necessary that such acts as are required by the Maryland law, as construed by its courts, were necessary. Such unequivocal acts are wholly wanting in this case. All the acts done for the purpose of changing domicil have been the renting of rooms in Baltimore, and the occasional occupation of such rooms; but there has never been any abandonment of the Washington home. On the contrary, he has maintained it, and the testimony shows that it has been, in every essential particular, his real place of residence. In order to have effectively changed his domicil, it would have been necessary for the appellee to completely abandon his Washington residence, and to have made his permanent home in Baltimore. This he did not do, but it is apparent that he treated Washington as his permanent residence, and that it was the locality to which, after every absence, he returned. The record shows that he is much attached to his son, and that he considered his home to be where the son was, which was the city of Washington. The conclusions of the justice below are fully supported by the case of *Thomas* v. *Warner,* 83 Md. 14. It is understood that appellants contend that, by voting in Maryland, the appellee is estopped to claim citizenship in the District of Columbia, but the complete answer to this contention is that there is no mutuality, as the appellants are not concluded by that act, nor parties to the action of the board of registration.

Mr. Justice MORRIS delivered the opinion of the Court:

In much of the reasoning of the learned justice who heard

VOL. XXIII—25

this cause in the court below, and whose very able opinion appears
in the record before us, we fully concur; and if this were a case
to be determined by the mere preponderance of evidence respect-
ing the relative durations of time spent by the appellee in this
District and in the State of Maryland, and the relative amounts
of activity expended by him in the two several localities, we
would have no great hesitation in reaching the same conclusion
that was reached by that court. But in our opinion this is not
such a case. There is a controlling element here which, although
it did not escape the attention of the court, was not given the
weight to which we think it was entitled.

The question of residence is often exceedingly difficult to be
determined, being, as it generally is, dependent on considerations
both of intention and conduct; but we deem it unnecessary to
enter very largely into the general question here. It may suf-
fice to say for all present purposes that the matter of residence
is to be regarded as the equivalent of domicil; and that in con-
templation of the laws, both of the State of Maryland and of the
District of Columbia, both of which require consideration in the
present case, it requires and implies in this connection a fixed
place of abode with the intention to remain there permanently,
or at least indefinitely.

There is some reason to doubt whether the appellee, although
long a sojourner in this District, and even having a family and
a habitation here, had ever obtained a legal residence in the Dis-
trict in the sense of the law. He is a native of the State of
Maryland, and there are indications in the record that he never
abandoned his legal residence in that State. But however this,
be, it is certain that in May of 1901 he broke up his home in this
city, separated from his wife and child, and rented rooms in the
city of Baltimore, and moved part of his household effects to that
city with the avowed intention to gain a residence there for the
purpose of the exercise of the elective franchise. It is also clear
that he carried this purpose into effect; that he satisfied the
board of registration in the city of Baltimore that he was en-
titled to be registered there as a duly qualified voter under the
constitution and laws of the State of Maryland, and that he voted.

in that city in the elections of the year 1901 and succeeding years, and yet claims to be entitled to vote there. He yet maintains the residence in the city of Baltimore which he then acquired.

Now, in order to have so succeeded in being registered as a qualified voter in Maryland and to have voted there, if he did not practice a gross fraud upon the laws of that State he must have shown to the satisfaction of the board of registration in Baltimore city that he was at the time of his registration, as required by the Constitution and laws of that State, a resident of the State for one year, and of the legislative district in which he offered to vote for six months next preceding the election. And this residence must have been residence in good faith, with the intention of remaining there and making the place his fixed and permanent home. *Thomas* v. *Warner,* 83 Md. 14, 34 Atl. 830..

Our Code (§ 971) provides that no decree of divorce shall be rendered in this District in favor of anyone not a resident of the District; and it provides further that no divorce shall be decreed in favor of any person who has not been a bona fide resident for at least three years before the application therefor, for any cause which shall have occurred out of the District and prior to residence therein. By this it is evidently intended and required that residence for the purpose of divorce should in all cases be in good faith, and such residence as the laws of Maryland prescribe as a prerequisite for voting,—that is, residence with the intention of remaining in the District and making it the party's fixed and permanent home.

Now, it is not open to argument that there cannot be at the same time two such places of residence. It is a law of our physical existence that one cannot be in two places at the same time; and it is equally a law of our civil existence that there cannot be two places of residence, each with the intention of our remaining there permanently or indefinitely and of its becoming our fixed and permanent home. Of course we know that there can. be, and there often are, two places of residence, between which. one may divide his time and in each one of which it is the intention of the person to spend a part of his time each year; and one

388 DOWNS v. DOWNS.

Opinion of the Court. [23 App.

may spend his time equally in both, and both may be regarded in fact as fixed places of habitation. But even in that case, while perhaps the party himself may elect which is to be considered his legal residence, there must, in contemplation of law and for the purposes of the law, be some discrimination. A person may not vote twice in the same State at the same election because he happens to have two residences in the State, one for summer and one for winter, if the fact of residence is made a prerequisite for voting. A person may not be a resident of two different States at the same time for the purpose of suing for a divorce in either, if residence is made a prerequisite for the maintenance of the suit. And for the same reason, where the same prerequisite of residence is required for divorce and for the exercise of the elective franchise, one cannot at the same time be a resident of one jurisdiction for one of these purposes and a resident of another jurisdiction for the other purpose. And yet this is precisely what the appellee claims in the present instance. We must regard the claim as wholly inadmissible.

Authorities are not wanting, if any are required, to show that in statutes relating to taxation, right of suffrage, divorce, limitation of actions, and the like, the term "residence" is used in the sense of "legal residence;" that is, the place of domicil or permanent abode, as distinguished from the place of temporary residence. See De Meli v. De Meli, 120 N. Y. 485, 17 Am. St. Rep. 652, 24 N. E. 996; McShane v. McShane, 45 N. J. Eq. 342, 19 Atl. 465, and Brundred v. Del Hoyo, 20 N. J. L. 328.

Reliance is placed on the case of Thomas v. Warner, 83 Md. 14, 34 Atl. 830, as establishing the conclusion that under such conditions as are manifested in the record before us the appellee would not have been admitted to the exercise of the right of suffrage in Maryland as not having acquired the required residence in that State; but the plain answer to this is that he has in fact been admitted to the exercise of the right of suffrage. Whether he has been so admitted through fraud and fraudulent representations on his part, or in consequence of a fair and honest showing that his true residence was in that State, can make no difference in this case. If it was through fraud and

fraudulent representations that he procured himself to be re-
garded as a bona fide resident of the State of Maryland, he
should not now be heard to establish his own infamy, although
such is the necessary conclusion to be drawn from the decision
of the court below; but if, on the other hand, his presentation
of his case to the board of registration in Maryland was fair
and honest, his present allegation of residence in this District
is devoid of any foundation in fact. In either case he must be
held to have made his own record, and he must stand by it.

We are compelled to conclude that there was error in the
order appealed from which overruled the pleas interposed by
the defendants, and that those pleas should have been sustained
and the bill or petition for divorce dismissed. The said order
will, therefore, be reversed, with costs, and the cause will be re-
manded to the Supreme Court of the District of Columbia, with
directions to enter a decree sustaining the pleas and dismissing
the bill.

And it is so ordered.                                   *Reversed.*