## McFARLAND v. UNITED STATES.
### No. 10041.

United States Court of Appeals
District of Columbia Circuit.

Argued March 21, 1949.

Decided April 27, 1949.

Mr. Mark P. Friedlander, of Washington, D. C., for appellant.

Mr. Leroy A. Brill, of Washington, D. C., also entered an appearance for appellant.

Mr. L. Clark Ewing, Assistant United States Attorney, of Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, John D. Lane and John C. Conliff, Jr., Assistant United States Atorneys, all of Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER and PRETTYMAN, Circuit Judges, and HARRY E. WATKINS, District Judge, sitting by designation.

WILBUR K. MILLER, Circuit Judge.

For many years the appellant, Edgar C. McFarland, lived and worked in the District of Columbia. Whether he changed his domicile to Maryland about September, 1945, though still employed in the District, was the crucial question of fact at his trial for perjury which resulted in the conviction of which he now complains.

In December, 1946, while testifying in his own behalf in a suit for divorce which he had filed in the United States District Court here, he swore that "continuously for the ten years next before this" he had lived at 1321 N Street, N. W. In due time the divorce was granted.

A grand jury in the District of Columbia indicted McFarland in June, 1948, charging he had knowingly sworn falsely concerning his residence, a matter which was material because Title 16, § 401, of the District of Columbia Code provides:

"No decree of nullity of marriage or divorce shall be rendered in favor of anyone who has not been a bona fide resident of

the District of Columbia for at least one year next before the application therefor, * * *."

The complaining witness was one Alva Rogers Conradi, who also testified at the trial that from September, 1945, to May, 1946, she and her son lived in Landover Hills, Maryland, in a house rented from McFarland, and that the appellant "slept there every night."

McFarland asks us to reverse his conviction because, as he contends: (a) his statement concerning his residence was legally true; (b) the court erred in instructing the jury; and (c) the court wrongfully refused to permit him fully to cross-examine Mrs. Conradi.

We take up first the assignment of error in the charge to the jury. The court granted five "prayers"[1] which were read to the jury by the appellant's attorney, all of which were accurate statements of legal principles. From them the jury learned that the bona fide resident who alone can be granted a divorce in the District of Columbia is one who has been domiciled here for the requisite period of time. The presiding judge supplemented the instructions read by counsel with an oral charge which included the following:

"You are instructed, of course, that insofar as the divorce statute is concerned, that the residence required does not necessarily mean the technical, legal domicile, but does mean that locality where the social life of the parties [party is] lived, and that locality where the greatest publicity will be given by litigation concerning his status."[2]

A later portion of the charge told the jury that the residence required by the statute is equivalent to domicile, but the statement just quoted was not withdrawn.

■ In construing § 401, we said in Downs v. Downs, 1904, 23 App.D.C. 381,

386, " * * * the matter of residence is to be regarded as the equivalent of domicil[e] * * *", so the statement quoted above from the charge in the present case was erroneous and, standing alone, would require reversal, as it permitted the jury to convict the appellant even if he had in fact been domiciled in the District of Columbia. The question is, therefore, does the erroneous instruction constitute reversible error when considered in the setting of the instructions as a whole?

■■ If a charge to a jury, considered in its entirety, correctly states the law, the incorrectness of one paragraph or one phrase standing alone ordinarily does not constitute reversible error; but it is otherwise if two instructions are in direct conflict and one is clearly prejudicial, for the jury might have followed the erroneous instruction. Nicola v. United States, 3 Cir., 1934, 72 F.2d 780, 787; Drossos v. United States, 8 Cir., 1924, 2 F.2d 538, 539. "A conviction ought not to rest on an equivocal direction to the jury on a basic issue." Bollenbach v. United States, 1946, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L Ed. 350.

■ The trial judge's charge in the present case, because of its conflicting instructions as to the nature of the residence requisite to jurisdiction under the statute, was prejudicially erroneous. On that account, the judgment must be reversed.

■ We find further error in the court's refusal to permit cross-examination of Mrs. Conradi as to whether she and McFarland were living in an illicit relationship in Maryland during the latter part of 1945 and the first few months of 1946. That relationship, if it ever existed, apparently had long since terminated when she testified before the grand jury and at the trial, for otherwise it may be supposed that she would not have appeared against

---

[1] The word "prayer" is often colloquially used in this jurisdiction to denote, by a sort of metonymy, an instruction offered by one of the parties.

[2] The trial court's use of this statement probably was due to the fact that substantially the same language appears in an annotation under Title 16, § 401, of the D.C.Code, where it is attributed

to Downs v. Downs, 23 App.D.C. 381. This was an editorial error, for the statement is shown at page 384, 23 App.D.C., in the summary of the argument made by the appellee in that case. The opinion of the court holds just the contrary. Doubtless the compiler of the Code will correct the error.

the appellant. Consequently, her admission of an illicit affair, had it been obtained, might have tended to show McFarland merely sojourning in Maryland for an extramarital adventure. It might have tended also to show bias and prejudice on the part of Mrs. Conradi. Cross-examination might, therefore, have elicited information affecting Mrs. Conradi's credibility and should have been permitted.[3]

Since the judgment appealed from must be reversed because of the two errors we have noticed, we need not stop to consider whether McFarland's testimony as to his domicile was legally true, as he claims.

Reversed and remanded.

---

[3] "* * * It is elementary that the motive of a witness is a proper subject of cross-examination." Meeks v. United States, 9 Cir., 1947, 163 F.2d 598, 601.

Mr. Justice Rutledge, speaking for this court in Ewing v. United States, 77 U.S. App.D.C. 14, 21, 135 F.2d 633, 640, certiorari denied, 1943, 318 U.S. 776, 803, 63 S.Ct. 829, 991, 87 L.Ed. 1145, 1167, said: "* * * a witness may be cross-examined as to facts tending to show bias for or against a party, or his willingness to be unscrupulous in giving testimony, for impeachment purposes; * * *."