**UNITED STATES of America**
v.
**Maurice F. IRVING, Appellant.**
**No. 23096.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 19, 1970.

Decided Oct. 9, 1970.

2d 548 (7th Cir. 1958); Stern v. United States, 249 F.2d 720 (2d Cir. 1957).

Mr. James L. Dooley, Washington, D. C. (appointed by this Court) for appellant.

Mr. Terry Philip Segal, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief for appellee. Mr. James R. Phelps, Asst. U. S. Atty., also entered an appearance for appellee.

On Appellant's Motion for Rehearing

Before WILBUR K. MILLER, Senior Circuit Judge, WILKEY, Circuit Judge, and DAVIES *, Judge, U. S. District Court for the District of North Dakota.

WILKEY, Circuit Judge:

In its present posture this case is before us on rehearing. After the original submission of this appeal on briefs and oral argument, this court unanimously affirmed appellant's conviction for burglary and petty larceny by a per curiam order without opinion. In so doing, however, the present writer added a concurring opinion stating in part:

> [W]e do not approve that portion of the instructions given by the trial court, on the charge of aiding and abetting, which consisted of the following example:
>
> Let's say A and B are friends, walking down the street or riding around the streets, and B says to A, "would you please take me by the bank at such and such a place, I want to cash a check, and will you wait for me outside."
>
> And A says, "Fine, I'll take you." So A takes him, and B goes in and

robs the bank. Of course, in that circumstance A, not knowing that there was any intention to rob the bank, A, not knowing that a crime was going to be committed, A would not be guilty of robbing the bank.

> Further, though, if B came out of the bank and said, "I have just robbed it, I have got this sack full of money, let's go," and then B got in A's car and A took off and ran knowing that the crime had been committed, and helping in the escape, he could be liable.

The last paragraph of this example was erroneous, in that it did not describe the aiding and abetting of a substantive offense, D.C.Code § 22–105, but rather described the offense of an accessory after the fact, D.C. Code § 22–106. *See* United States v. Varelli, 407 F.2d 735, 749 (7th Cir. 1969). Since appellant's indictment did not charge him with being an accessory after the fact, the giving of this example to the jury was error. *See* Government of Virgin Islands v. Aquino, 378 F.2d 540, 552–554 (3rd Cir. 1967).

Thus inspired and encouraged, appellant's counsel then came forward with a strongly worded and researched petition for rehearing, relying principally on the Supreme Court decision in Bollenbach v. United States.[1] We granted rehearing. Our own research has added decisions of this court following *Bollenbach,* in circumstances which appear indistinguishable from those of the case at bar. We therefore find it necessary to reverse appellant's conviction and remand for a new trial.

The erroneous example in the charge quoted above was a most unfortunate lapse in an otherwise very ably conducted trial by an experienced trial judge. During his main charge the District Judge correctly instructed the jury on aiding and abetting. Two hours and 19

---

* Sitting by designation pursuant to Title 28, U.S.Code, Section 292(c).

1. 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

minutes after the jury had retired for deliberations [2] the court reconvened to respond to the jury's note reading:

> Could I have a clarification of the aiding and abetting as far as burglary is concerned.

The District Judge then repeated his correct aiding and abetting instruction. Further to assist the jury, he then followed that charge with an example in which the accused would plainly be guilty of the crime of aiding and abetting a bank robbery. Appellant's counsel then asked for an example in which the accused would not be guilty of aiding and abetting, whereupon the District Judge gave the erroneous instruction cited above, to which objection was immediately made.

The unfortunate and most critical circumstance is that the words of this erroneous instruction were the very last words uttered to the jury other than the instruction, "You may retire and resume your deliberations." In less than 15 minutes the jury returned with a verdict of guilty.

In Bollenbach v. United States, the precedent case for the line of authority by which we feel compelled to reverse this conviction, none of which was cited to us in the original briefs and argument, the Supreme Court, speaking through Mr. Justice Frankfurter, held:

> Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating abstract charge.[3]

We do not characterize the charge of the District Judge here as an "unilluminating abstract" one, although it was "unexceptionable" in the sense that it was entirely correct and no objection was made thereto. But in Bollenbach, as here, the judge had originally given technically correct instructions and, upon finding the jury uncertain as to the meaning of those instructions and how they should be applied to the case, answered explicit questions of the jury with an erroneous instruction. In Bollenbach, as here, the faulty example was followed in a matter of minutes by a return to the courtroom with a guilty verdict. In commenting, Mr. Justice Frankfurter wrote:

> * * * [The jury] reached a verdict of guilty under the conspiracy count five minutes after their inquiry was answered by an untenable legal proposition. It would indeed be a long jump at guessing to be confident that the jury did not rely on the erroneous "presumption" given them as a guide.[4]

We are not disposed to take the "long jump at guessing" that the jury did not rely on the last words of the trial judge, particularly since the Supreme Court in Bollenbach pointed out the length of the jump involved, i. e., that in so doing an appellate court must assume "that the lay jury will know enough to disregard the judge's bad law if in fact he misguides them." [5]

We believe the Government's reliance upon Kotteakos v. United States [6] and Federal Rule of Criminal Procedure 52 (a) is misplaced. In Kotteakos the Supreme Court carefully considered the historical origin and the practical application of the harmless error rule, now Fed.R.Crim.P. 52(a), and reversed the convictions because of an erroneous instruction. In so doing, Mr. Justice Rutledge wrote,

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not af-

---

2. This included time for lunch, organization of the jury, and selection of a foreman.

3. 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

4. *Id.* at 614, 66 S.Ct. at 406.

5. *Id.* at 613–614, 66 S.Ct. at 405.

6. 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

fected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.[7]

Although the erroneous charge and circumstances in Kotteakos were not similar to the case at bar, the principle expressed is the same as that in Bollenbach, where the type of charge and circumstances of time and possible effect were almost identical to that in Irving here.

We are reinforced in this opinion by decisions of our own court after Bollenbach and Kotteakos had been decided by the Supreme Court. In McFarland v. United States, Circuit Judge Wilbur K. Miller, speaking for a unanimous court, wrote:

> If a charge to a jury, considered in its entirety, correctly states the law, the incorrectness of one paragraph or one phrase standing alone ordinarily does not constitute reversible error; but it is otherwise if two instructions are in direct conflict and one is clearly prejudicial, for the jury might have followed the erroneous instruction. (Citing cases.) "A conviction ought not to rest on an equivocal direction to the jury on a basic issue." Bollenbach v. United States, * * *.[8]

McFarland's conviction for perjury was reversed. We see no distinction between McFarland and Irving.

In Kitchen v. United States [9] this court reversed and remanded for a new trial a conviction for first degree murder, when an erroneous instruction defining murder in the second degree was given

by the trial judge. In so doing this court relied on the principle of Bollenbach, although the circumstances in Kitchen were the reverse of Bollenbach and the case at bar. In Kitchen this court believed that the jury, although it convicted of first degree murder, should have had the option of considering second degree murder under a correct instruction, while in the case at bar the jury was given the option of convicting on a charge of accessory after the fact when such charge was not made by the indictment and was an offense distinct from and not included in the one charged.

Under the Government's evidence, in the car which he was driving the appellant had goods which had been stolen less than an hour before through the commission of a burglary and larceny. Under the trial court's instructions the jury had three alternatives on which it could base a finding of guilty:

1. That he personally committed the burglary and larceny; or

2. That he aided and abetted the burglary and larceny; or

3. That he was an accessory after the fact to such burglary and larceny.

The evidence tended to show that he was the driver of the getaway car, and had probably waited outside the Holiday Inn. It is logical that the jury concluded he was guilty under either alternative 2 or 3. But which? The trial judge in his last two examples had equated 2 and 3 as being the same offense, and implied that the jury could convict or acquit on either theory. The appellant was never charged with being an accessory after the fact, which is a separate offense carrying a punishment different from and less than aiding and abetting.[10]

> We do not agree with the dissenting view that the instruction can be saved by considering that the asportation element of a robbery offense continued while a hypothetical driver piloted the get away car.

> The offense in reference to which the judge was instructing the jury was bur-

7. Id. at 765, 66 S.Ct. at 1248.

8. 85 U.S.App.D.C. 19, 20, 174 F.2d 538, 539 (1949).

9. 92 U.S.App.D.C. 382, 205 F.2d 720 (1953).

10. Compare 22 D.C.Code § 22–105 with 22 D.C.Code § 22–106 (1967).

For determination of appellant's guilt or innocence under proper instructions, appellant's conviction must therefore be

Reversed and remanded.

WILBUR K. MILLER, Senior Circuit Judge (dissenting):

In the consideration of a criminal appeal, it is usually helpful to know what the appellant did. For that reason, I give a brief statement of the facts of this case, gleaned from the testimony of the two witnesses for the Government. The appellant did not testify and did not introduce any witnesses.[1]

James J. Lesko, general manager of a motel, testified that about 1:00 p. m. August 24, 1968, on information received from a guest, he called the police, asking that they look out for a blue or grey station wagon with dealer's license plates DX 300—and three male occupants. As he drove to the rear parking lot of the motel, Lesko saw a Dodge with D.C. dealer's plates and three occupants proceeding from the parking lot to New York Avenue. He went to room 166, found the door open and a television set and a gold blanket missing.

Ronald S. Dotson, a police officer, testified that on August 24, 1968, about 1:00 p. m., as he was cruising in a one-man scout car on Bladensburg Road, he received by radio information that a grey station wagon with D.C. temporary tags DX 30078 was involved in a burglary at a motel two blocks away. He proceeded to the motel and, as he entered its parking lot, he saw a pale blue 1957 Dodge, with D.C. temporary tags and containing three men, leaving at a high rate of speed.

Dotson gave chase, turning on his siren and using his loud speaker in an effort to stop the fleeing car. It did not stop, however, until it stalled after a fifteen-block high-speed chase. As Dotson then approached on foot, two of the occupants attempted to leave the car. Dotson was able to arrest Maurice F. Irving, the driver, and James Irving, the rear seat passenger. The front seat passenger escaped. After arresting the Irvings, the officer recovered a television set and a gold blanket which were in the car. These articles were identified as those lately stolen from the motel.

A jury found Maurice F. Irving guilty of burglary and petit larceny. He was sentenced to serve 18 months to seven years on the burglary charge and one year on the petit larceny count, the sentences to run concurrently.

The majority reverse solely because they conclude the trial judge erred in one of his definitions of aiding and abetting. Pursuant to counsel's request, Judge Hart gave several examples of aiding and abetting, using a suppositious bank robbery as an illustration.[2] In the last of these examples, the trial judge said:

"Further, though, if B came out of the bank and said I have just robbed it, I have got this sack full of money, let's go, and then B got in A's car and A took off and ran knowing that the crime had been committed, and helping in the escape, he could be liable."

With respect to the foregoing quotation, the majority say:

"The last paragraph of this example was erroneous, in that it did not describe the aiding and abetting of a substantive offense, D.C.Code § 22–105, but rather described the offense of an accessory after the fact, D.C. Code § 22–106. *See* United States v. Varelli, 407 F.2d 735, 749 (7th Cir.

---

glary, not robbery. Asportation is no element of the crime of burglary. Burglary was complete by the time the other participants left the building. Even if the instruction be considered to be correct on robbery, it was incorrect and misleading in this case, because it was to be applied by the jury to determining guilt or innocence on the charge of burglary.

1. He did introduce a stipulation that, on the day before the incident involved here, he had been arrested for driving without a license. If he hoped the jury would accept this as the reason for his flight, he was disappointed.

2. The judge's language is reproduced in the first paragraph of the majority opinion.

1969). Since appellant's indictment did not charge him with being an accessory after the fact, the giving of this example to the jury was error. *See* Government of Virgin Islands v. Aquino, 378 F.2d 540, 552–554 (3rd Cir. 1967)."

I disagree. The *Varelli* case, cited by the majority as authority for saying Judge Hart's example "did not describe the aiding and abetting of a substantive offense," involved a situation where the substantive crime had been committed and completed before any participation in it by Varelli. He was an accessory after the fact, therefore, and not an aider and abetter, and the *Varelli* case so held.

Not so in Judge Hart's example. There, B had just emerged from the bank he had robbed with the money he had stolen, had gotten in A's car, informed him of the crime and said, "Let's go." Thereupon A took off, knowing that the robbery had been committed. This is quite different from the *Varelli* case, for here the substantive crime of robbery had not been completed but was still in progress when B entered A's car and it "took off."

This is so because asportation is an ingredient of the crime of robbery and, as it had barely begun when B entered A's car, it was still going on as A drove away; and, therefore, the robbery was still in progress. Thus, A entered into the continuing substantive crime of robbery, and was an aider and abetter therein and not an accessory after the fact as was Varelli.

It is to be noted that in his example Judge Hart said A "could be liable" as an aider and abetter. If, in the example, pursuit of A's car had immediately begun and been continuously pressed, A undoubtedly would have been liable as an aider and abetter. The absence of pursuit in Judge Hart's example caused him to say A "could be liable" instead of "would be liable" as an aider and abetter.

Because the majority ignore the fact that, in the trial judge's example, asportation was still going on and consequently the substantive crime of robbery was still in progress, they err in saying the example "was erroneous, in that it did not describe the aiding and abetting of a substantive offense." As a consequence, they err in reversing the appellant's conviction because of this fancied error in Judge Hart's example.

That asportation is an ingredient of and a continuation of the crime of robbery, after the theft has been accomplished, has been decided by this court. In Carter v. United States,[3] Carter robbed one Kozak and shortly thereafter shot and killed a police officer who was pursuing him. He was found guilty of murder in the first degree because he killed the officer during the perpetration of the robbery.

Carter admitted that he robbed Kozak and killed the officer, but appealed from the murder-during-robbery conviction on the theory that he had finished robbing Kozak when he shot the policeman. He argued that when he left "the immediate vicinity * * * there was sufficient asportation * * * to make the robbery complete, there having been no pursuit." We held "that so long as the essential ingredient of asportation continues, the crime of robbery is still in progress; and * * * that during continuous pursuit immediately organized and begun, asportation is still going on. * * * *"

In the *Carter* case there was a slight interval between the actual theft of the money and the beginning of the pursuit. With respect to this we said, at p. 42, 223 F.2d at 334:

"We have no doubt that the appellant had not secured to himself the fruits of the robbery, but was still feloniously carrying away the stolen money when Cassels [the slain policeman] began the chase. The delay was so slight that the bandit had not been

3. 96 U.S.App.D.C. 40, 223 F.2d 332 (1955), cert. denied 350 U.S. 949, 76 S.Ct. 324, 100 L.Ed. 827 (1956).

able to reach a place of seeming security. * * * "

We quoted with approval the following excerpt from State v. Habig, 106 Ohio St. 151, 140 N.E. 195, 197–198 (1922), a case strikingly similar to the *Carter* case as to facts and the legal question presented:

"It will therefore be seen that the commission of the crime necessarily includes not only the violent and forcible taking but also the felonious carrying away of the proceeds of the robbery. It is argued with both force and logic that the crime is complete when there has been a violent and forcible taking, though the asportation of the goods may be ever so slight, and from this it is claimed that when the crime of robbery is once complete any homicide thereafter committed, connected with the robbery, is not a commission of homicide in perpetrating a robbery. * * * Though the crime of robbery is complete with only a slight asportation, yet, if the carrying away is in fact a long distance, the crime is still in process of commission if pursuit of the robber is immediately begun and continued without interruption until the flight has carried the perpetrator to a place of seeming security, or until uninterrupted pursuit is no longer continuously active. The mere fact of delay in beginning the pursuit until an alarm can be sounded and pursuit organized and instituted does not necessarily segregate the flight and prevent it being part and parcel of the crime. * * *

Maurice Irving had a much more active part in this burglary and larceny than did A in the bank robbery in Judge Hart's example. After a wild chase, he was captured in exclusive [4] and unexplained possession of recently stolen articles, from which fact the jury could

infer that he had stolen them; and from his desperate flight, the jury could infer a consciousness of guilt. Its verdict shows the jury made those permissible inferences. Moreover, the pursuit of the appellant immediately began and continued uninterruptedly until he was captured; thus the asportation of the stolen articles was a continuing part of the original substantive larceny and the burglary which preceded it,

It becomes apparent, therefore, that what the appellant did brands him, not as an accessory after the fact, but at least as an aider and abetter; and Judge Hart's example was not error. This makes inapposite the *Bollenbach, McFarland* and *Kitchen* cases, relied upon by the majority, which turned on erroneous instructions while the case before us does not. Bollenbach was convicted as a principal on the theory that he was an aider and abetter; but, unlike the present appellant, he did not participate until the substantive crime had been completed, and so was held to be only an accessory after the fact.

The *McFarland* and *Kitchen* cases did not deal with aiding and abetting or with accessory after the fact. Both were reversed because of an erroneous instruction and neither has application here.

In an effort to avoid the impact of this dissent, the majority have added two paragraphs to their footnote 10. These paragraphs contain inaccuracies and mistakes of law which I now point out.

The remarks of Judge Hart, which the majority regard as reversible error, were not an instruction on burglary, as they seem to think, but an illustration of aiding and abetting in the crime of robbery. It was only that illustration which the majority say was wrong and only because of that is appellant's conviction overturned. I have already demonstrated that Judge Hart's example was quite

---

4. Two or more persons may have the exclusive possession of stolen property. Weisman v. United States, 1 F.2d 696 (8th Cir. 1924); State v. Raymond, 46 Conn. 345; Flamer v. Delaware, Del.Supr., 227 A.2d 123, 127 (1967); Graham v. State, 6 Md.App. 458, 251 A.2d 616, 619–620 (1969).

correct, and that the majority err in reversing on the idea that A in the illustration was not an aider and abetter but nothing more than an accessory after the fact. They still completely ignore the element of asportation in the example.

The majority say in their addition to footnote 10: "Asportation is no element of the crime of burglary. Burglary was complete by the time the other participants left the building." In making these statements the majority forget that the burglary was immediately followed by larceny, including the asportation of the stolen articles. And they ignore the fact that during asportation the appellant was in unexplained, exclusive possession of the recently stolen goods, which led to his conviction of both burglary and larceny. *See* McNamara v. Henkel, *infra.*

This court [Judge Justin Miller, writing for himself and the late Judges Groner and Edgerton] said in Edwards v. United States, 78 U.S.App.D.C. 226, 139 F.2d 365 (1943), cert. denied 321 U.S. 769, 64 S.Ct. 523, 88 L.Ed. 1064 (1944):

> "This court has held that possession of recently stolen property, unexplained, is sufficient to support a verdict of guilty in larceny. Housebreaking, robbery and burglary are merely aggravated forms of larceny and there is no reason why evidence competent in one case should not be competent, also, in the others. * * * [Footnotes omitted.]"

The majority's attempt to distinguish between the burglary and larceny in this case is further shown to be invalid by what Mr. Justice Charles Evans Hughes wrote in McNamara v. Henkel, 226 U.S. 520, 524–525, 33 S.Ct. 146, 147, 57 L.Ed. 330 (1913):

> "* * * It is objected that while possession of property recently stolen may be evidence of participation in the larceny, the apparent possession of the automobile by the appellant affords no support for a conclusion that he committed the burglary, the crime with

which he was charged. The permissible inference is not thus to be limited. The evidence pointed to the appellant as one having control of the car and engaged in the endeavor to secure the fruits of the burglarious entry. Possession in these circumstances tended to show guilty participation in the burglary. This is but to accord to the evidence, if unexplained, its natural probative force. [Citations omitted.]

Maurice Irving not only did not testify but also presented no real defense and introduced no witnesses. He was convicted by ample proof; in fact, he was literally caught in the act, that is, in the unexplained, exclusive possession of recently stolen goods. This reversal, based on the mistaken notion that there was an erroneous instruction, is the sort of thing which causes concerned citizens to criticize the courts.

For the reasons given, I dissent.