Gregory L. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CF–524.

District of Columbia Court of Appeals.

Argued Dec. 13, 1994.

Decided Jan. 26, 1995.

William S. Rhyne, appointed by this court, McLean, VA, for appellant.

Timothy J. Heaphy, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Patricia M. Haynes, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

A jury convicted appellant of one count of second-degree murder while armed, and one count of possession of a firearm during a crime of violence, in violation of D.C.Code §§ 22–2403, –3202, –3204(b) (1994). On appeal, appellant claims the trial court committed plain error in the manner in which it instructed the jury on second-degree murder, manslaughter, and self-defense and erroneously allowed the use of a prior consistent statement by the government to rehabilitate a witness. We affirm.

## I.

At trial, the government established that on June 24, 1990, Rhonda Camp went to Anthony Butler's house to get money to buy diapers for their baby. She was accompanied by her cousins, Katrina Jones and Crystal Green, and three other young persons. An argument ensued between Ms. Camp and Mr. Butler, the victim, which ended after Mr. Butler gave her the money she requested. Ms. Camp and her friends left, but approached Mr. Butler and his current girlfriend, Michelle Whiting, when they attempted to leave the apartment. Ms. Camp, Ms. Jones, Ms. Green, and another person began punching Ms. Whiting until Mr. Butler, his mother, and godmother broke up the melee. As Ms. Camp and her friends left, they threatened Mr. Butler, stating that "he'd get his."

Mr. Butler and Ms. Whiting went back inside the house and called a friend, Edward Glover, who came over with Mr. Butler's cousin, Damian Stokes. They then picked up two friends of Ms. Whiting, Flafeia Douglas and Angela Warren. All six went to look for Ms. Camp to resolve their disagreements. They found Ms. Camp and Katrina Jones in front of Crystal Green's house at 4303 3rd Street, S.E. As Mr. Butler and his five companions approached a group in front of Ms. Green's house, Ms. Whiting noticed appellant pull a gun from his waistband. Both Ms. Warren and Mr. Glover also saw appellant carrying a gun that night, and Ms. Douglas testified that she saw appellant pull a dark object from his waistband when Ms. Camp and Ms. Whiting were fighting.

Ms. Camp and Ms. Whiting resumed their altercation, and appellant restrained Ms. Jones, who wanted to assist Ms. Camp. The fight was interrupted by gunfire, and according to Mr. Glover, appellant fired the first shot in the air. Mr. Stokes then fired his gun at appellant and Ms. Jones. Mr. Glover heard Mr. Stokes' gun click, indicating that he had used all of the ammunition. Mr. Glover, Mr. Stokes, and the victim started to run up a hill. As they reached the top of the hill, Mr. Butler was shot in the head by appellant.

Both Ms. Whiting and Mr. Glover testified that they saw the appellant fire towards Mr. Butler, that Mr. Butler was not armed, and that Mr. Stokes was no longer firing at him when he shot the victim.[1]

Appellant testified that, while he restrained Ms. Jones to prevent her from entering the brawl between Ms. Camp and Ms. Whiting, Mr. Butler stated "[y]our friend ain't here so since your friend ain't here, you have to pay for it." He then saw Mr. Butler pull something from his waist and give it to Mr. Stokes, who placed it in his waist. Both appellant and Ms. Jones testified that Mr. Stokes fired the first shot at them. Appellant ducked behind a car, retrieved his gun

---

1. Mr. Stokes did not testify for either party at trial. The trial court admitted into evidence Mr. Stokes' statement to Metropolitan Police Detective Herman Johnson as a declaration against penal interest. Mr. Stokes told Detective Johnson that Mr. Butler gave him a gun to hold.

After seeing the gun in appellant's waistband, Mr. Butler told him to "bust the Bama," referring to the appellant. Mr. Stokes admitted that he fired five shots at the appellant and Ms. Jones, and then ran up the hill when he ran out of bullets.

which was in Ms. Jones' car, and fired a warning shot in the air. Appellant claimed that he fired four shots only after Mr. Stokes continued to shoot at him as he ran up the hill.[2] According to appellant, he did not know at the time of the shooting that Mr. Butler had been shot.

## II.

### A.

■ Appellant claims the trial court gave the jury conflicting instructions regarding imperfect self-defense and the mitigating circumstances that may reduce second-degree murder to manslaughter. Because appellant concedes he never objected to the instruction at trial, we will review this claim under a plain error standard, reversing only where "the error complained of [is] so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).[3]

■ Among his instructions, the trial judge directed the jury as follows:

> If you find that the Government has proven beyond a reasonable doubt that the defendant's use of deadly force under the circumstances as they appeared to him at the time of the incident was not reasonable and that all the other elements of second degree murder while armed have been proven beyond a reasonable doubt, then it would be your duty to find the defendant guilty of second degree murder while armed.

Appellant claims that this instruction misstated the rule of imperfect self-defense, which lessens the degree of culpability from second-degree murder to manslaughter. *See*

*Comber v. United States*, 584 A.2d 26, 41 (D.C.1990) (en banc). Appellant argues that in the first part of the instruction, which refers to the defendant's use of unreasonable deadly force under the circumstances as they appeared to them, the trial court was referring to the mitigating circumstances that would reduce a charge of second-degree murder to manslaughter. Appellant contends that the trial court erred in instructing the jury that they could return a verdict of second-degree murder if the government proved that defendant's use of deadly force was unreasonable because it implied that imperfect self-defense will not mitigate second-degree murder to manslaughter. According to appellant, the trial court should have included in that passage of the instruction the option of a manslaughter verdict as compared to second-degree murder. *See* W. LaFave & A. Scott, Substantive Criminal Law § 5.7(i) (1986) (explaining doctrine of imperfect self-defense).

A more plausible reading of the instruction would be that the trial court, in the first clause, meant to convey to the jurors that the lack of any mitigating circumstances, as proved by the government, allowed them to find appellant guilty of second-degree murder. Immediately after this instruction, the trial court stated that the presence of mitigating circumstances, such as the unreasonable use of deadly force, would require the jury to return a verdict of guilty of manslaughter. The trial court then instructed the jury that the reasonable use of force would result in an acquittal. Finally, he noted that these were the three possible verdicts. The instruction that appellant objects to was clearly meant to explain to the jury that, absent any mitigating circum-

---

2. Shortly after the incident, appellant told Detective Johnson that he fired two shots, and that he did not aim at anyone. The government impeached him with this statement.

3. Appellant argues that this case should be reviewed under a plain error reversible per se standard, citing *Kind v. United States*, 529 A.2d 294, 295 (D.C.1987), where we reviewed the trial court's failure to instruct the jury on an element of the offense under a plain error reversible per se standard. However, this proposition was explicitly rejected by the full court in *White v.*

*United States*, 613 A.2d 869, 877 (D.C.1992) (en banc), and *Kind* was expressly overruled in that regard. *Id.* at 879.

We urge counsel to be mindful of Super.Ct.Crim.R. 30, which provides in pertinent part:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

stances, the verdict could be second-degree murder.

■ Although the particular passage of the instruction may be unclear, as conceded by the government, it does not constitute an error so egregious as to warrant a reversal. When reviewing a claim of instructional error, this court will examine the instructions in their entirety. *Watts, supra,* 362 A.2d at 709. Furthermore, "[e]ven where a portion of an instruction is technically incorrect, reversal is not required if the error is 'cured by a subsequent charge or by a consideration of the entire charge.'" *Carter v. United States,* 475 A.2d 1118, 1125 (D.C.1984) (quoting *Howard v. United States,* 128 U.S.App.D.C. 336, 340, 389 F.2d 287, 291 (1967)).

Here, the trial judge began his instructions by carefully explaining the elements of second-degree murder and manslaughter, as well as articulating the mitigating circumstances that would reduce a second-degree murder conviction to manslaughter. The court methodically explained that in order to sustain a second-degree murder conviction, it is the government's duty to prove beyond a reasonable doubt that there are no mitigating circumstances. The court defined self-defense, distinguished between a reasonable and unreasonable belief that one is in imminent danger, and informed the jury that a reasonable belief of imminent danger would absolve appellant of all guilt, while an unreasonable belief would reduce second-degree murder to manslaughter.

Immediately after giving the assertedly erroneous instruction, the court then summarized the three possible verdicts: second-degree murder if the government proved beyond a reasonable doubt that there were no mitigating circumstances; manslaughter if appellant had an honest yet unreasonable belief that his life was in danger; and an acquittal if appellant had a reasonable belief that self-defense was necessary. These instructions were preceded by a cautionary instruction telling the jury to consider all the instructions as a whole without giving any undue weight to a particular instruction. Finally, the trial court reinstructed the jury on the definition of mitigating circumstances after deliberations began.

■ Taken as a whole, the trial court's instructions correctly informed the jury about the charged offenses, mitigating circumstances, and the theory of imperfect self-defense. Any error made by the trial court was cured by the numerous correct instructions detailing the elements of second-degree murder, manslaughter, and self-defense both before and after the error. We therefore reject appellant's contention that the trial court's one unclear instruction amounted to plain error.[4]

### B.

■ Appellant also challenges the trial court's use of an illustration to assist the jury in understanding the requirement of "imminent" danger of death or serious bodily injury when determining whether appellant's claim of self-defense is tenable. The trial court gave the following example:

> Let me give you an example, an obvious example, and this is not intended in any way to be a comment on this evidence or what you should find from the evidence, but just to make the concept simpler. If somebody shoots at you one day, and you manage to escape and get home, and you stew about it for a week and decide that wasn't right, and you get a gun and go back and shoot the other guy a week later, the guy who shot you, that is clearly not self defense, because when you did it, you were not in imminent danger of death or serious bodily injury, no matter how justified you might feel you were. So that is what the word "imminent" means as used in that context.

4. Appellant concedes that "the incorrectness of one phrase alone ordinarily does not constitute reversible error," *McFarland v. United States,* 85 U.S.App.D.C. 19, 20, 174 F.2d 538, 539 (1949), but argues that there is reversible error where, as in this case, we have two instructions which flatly contradict each other and therefore confuse the jury. In *McFarland,* the court presumed jury confusion because the trial court gave two completely contradictory instructions. Here, however, we are faced with one erroneous statement in the midst of a thorough and correct explanation of the applicable law, and thus, *McFarland* does not apply.

Appellant claims that this illustration articulated a rule that precludes a finding of self-defense after a cooling off period, regardless of whether there was a renewal of the initial threat.

Appellant's claim that this illustration prejudiced his right to a fair trial has no merit. First, the illustration bears no resemblance to the facts of this case, where appellant allegedly fired in self-defense immediately after the initial threat of danger. Therefore, even if the illustration articulated the rule asserted by appellant, it would have no effect on this case because the jury was not presented with a factual scenario involving a cooling off period. Second, the trial court negated any inference that the illustration was meant to be a general rule by expressly stating that it was "not intended in any way to be a comment on this evidence or what you should find from the evidence." Third, trial courts have broad discretion to give examples to illustrate and clarify their jury instructions. *See United States v. Dizdar,* 581 F.2d 1031, 1036–1037 (2d Cir.1978) (finding no error in illustration given by judge prefaced with cautionary instruction telling jury that it is not a comment on the evidence). Thus, we find no plain error in the court's illustration.

### III.

■ Appellant also contends that the court erroneously allowed the government to use a prior consistent statement to bolster a witness' testimony. At trial, the government introduced Flafeia Douglas, who testified that while appellant restrained Ms. Jones, she noticed him pull a dark object from his waistband. On cross-examination, defense counsel sought to show that Ms. Douglas only remembered what happened that day because she had since discussed the incident with her friends, Ms. Whiting and Ms. Warren.

Q: And when you talk about it, sometimes you tell what you remember happens, correct?

A: Yes.

Q: And sometimes it's Ms. Whiting who says what she remembers, right?

A: Yes.

Q: And you know that Ms. Whiting was upset when Anthony Butler got shot, right?

A: He was her boyfriend, yes.

On redirect, the government asked Ms. Douglas about her statement to the police shortly after the incident, which corroborated her testimony in court. Appellant contends that this statement should not have been used to rehabilitate Ms. Douglas because it was made when she had a motive to lie.

■ This court grants the trial court broad discretion to introduce prior consistent statements to rebut a charge of recent fabrication. *Prophet v. United States,* 602 A.2d 1087, 1094 (D.C.1992). The prior consistent statement must have been made when the witness did not have a motive to fabricate, and must directly rebut the defense's specific claim of fabrication. *Id.* at 1093. Appellant does not challenge the government's claim that defense counsel attacked the witness' credibility, but rather, asserts that the statement used to rehabilitate Ms. Douglas was made at a time when she had a motive to lie.

During cross-examination, defense counsel implied that the witness testified to information received from conversations with her friends rather than from her own personal observation. The trial court allowed the government to use the witness' statement made to the police shortly after the shooting to rebut that inference. We find no abuse of discretion. Clearly, the use of a statement made before she spoke to her friends about the incident refutes this charge. The statement was made before the event which gave rise to the defense's claim of fabrication, and therefore was in fact made before she had a motive to lie.

Moreover, appellant's claim that when Ms. Douglas made the police statement she was motivated by a desire to seek revenge for Mr. Butler's death is speculative and undermined by Ms. Douglas' testimony that she saw appellant with a dark object, rather than a gun. Appellant's theory is further weakened by Ms. Douglas' testimony that she did not even see the shooting. If Ms. Douglas did harbor a particular ill will towards appellant for killing her friend's boyfriend, clearly

she would have pinned the blame on him more convincingly and more effectively. We therefore reject appellant's claim that the statement should not have been admitted because it was made when Ms. Douglas had a motive to lie.[5]

The judgment is therefore affirmed.

*So ordered.*

---

**5.** We also reject appellant's claim that the trial court's failure to give a limiting instruction to the jury about the prior consistent statement amounted to plain error. *See Sweat v. United States,* 540 A.2d 460, 464 n. 3 (D.C.1988).